Donovan, J.
The plaintiffs, Thomas and Mary Soltys (“the Soltys”) move for summary judgment on Count VIII — the discrimination claim against defendants, Wellesley Country Club (“WCC”). WCC seeks summary judgment also on Count VIII and on Counts: I — intentional misrepresentation, II — negligent misrepresentation, III — specific performance, IV — detrimental reliance, V — breach of the covenant of good faith and fair dealing and VI — G.L.c. 93A, §9. The individually named defendants move for summaryjudgment on Count IX — breach of a fiduciary duty which is the only count pending against them.[2] For the following reasons the plaintiffs motion is denied and the defendants’ motions are allowed in part and denied in part.
BACKGROUND
After a hearing, review of the numerous submissions and memoranda, the following facts are undisputed in the summaryjudgment record. In discussing specific claims reference will be made to other undisputed facts pertinent to the allegation.
The Wellesley Country Club (“WCC”) is a non-profit, charitable organization. It was organized on July 6, 1910. A Board of Governors controls and manages the Club’s property and affairs pursuant to its By-Laws. The By-Laws grant to the Board the right to issue rules and regulations, regarding but not limited to membership, associated privileges, entrance fees, and dues. A membership application is not available to the public but must be obtained from a Certificate Owning Member. The applicant must be known to and proposed for membership by three Certificate Owning Members. The By-Laws limit the number of Certificate Owning Members to 550.
Thomas Soltys and his wife, Mary Ann Soltys submitted an application in March 1993 seeking golf membership. Full memberships were not available. However, in 1995[3] Thomas Soltys became a Certificate Owning Member of the Club.[4] Mr. Soltys maintained his status until March 2000.
*651 WCC rules required a family to choose between spouses as to who will be the Certificate Owner because the rules did not permit both spouses to be named on the certificate. The Certificate Owner has the option annually of designating his/her spouse as the Certificate Owner. The Certifícate Owner holds certain privileges not available to the “spouse golfer.” The Soltys have been on the WCC golf wait list (GWL) throughout the duration of their membership.
In 1991 the WCC Women’s Golf Association ByLaws were adopted to promote interest in women’s golf and to organize and conduct tournaments. Membership was divided into two Ladies Groups, 18 and 9 hole, each having separate Boards, by-laws and committees which are answerable to the WCC golf committee and the Board of Governors. Each member pays annual dues and handicap fees to her respective Group. The Rules and Regulations adopted by the Ladies 18 Hole Group limit tournaments to their members only. An amendment to the Rules and Regulations requires a two-thirds vote of their Executive Board. The WCC has a separate set of By-Laws.
From 1995 through 1999, a number of golf tournaments and events were held at the Club. Some of these events were open to women golf members, others to men golf members, while others to golf members regardless of gender. Also, on occasion, tournaments were open only to Certificate Owning Members with golf memberships, regardless of gender. In addition, the Ladies 18 Hole and 9 Hole Groups[5] held their own tournaments and events which, for the most part, were open only to members of the two groups. The tournaments are scheduled at the time requested by the sponsoring Ladies Group.
A GWL Committee was formed in 1999 to address and examine issues pertaining to the GWL. The Soltys attended the committee meetings. The Committee presented suggestions to the Board of Governors regarding additional privileges for GWL members. As a result of the suggestions GWL Members[6] could participate in tournaments on a “space available” basis. However this rule did not apply to the Ladies 9 Hole or the 18 Hole Groups because each group, in determining the eligibility requirements for entry into their tournaments, opted to exclude those who were not members of the Ladies group.
On April 9, 1999, Frederick Haynes, the president of WCC, sent a letter to all Club members reporting the changes based on the Committee’s recommendations. The president offered full refunds of the initiation fee and bond to GWL members who joined the club from 1994-96 but now wished to resign. The GWL members were offered a new membership which allowed them to either remain on the wait list with the current limited privileges or become “Restricted Golf Members”[7] with more liberal playing privileges. GWL members could continue to play in “certain tournaments on a space-available basis.” New advance tee times for GWL members were implemented granting them preference for Monday tee times. Mr. Haynes wrote that GWL members would receive full membership based on when they joined the wait list: in 1994, membership by 2000, in 1995, membership by 2002, and in 1996, membership by 2004 (all subject to review by the Board on an annual basis). After receiving this letter the Soltys chose to remain as GWL Members and not upgrade to the Restricted Golf Membership which cost more money.
Beginning June 1, 1999, the Ladies 18 Hole Group decided to allow women on the GWL who elected the “Restricted Golf Membership” and had the proper handicap (38 or lower)[8] to play in seven of their “regular” Tuesday Tournaments, but the “Major” Tournaments continued to be exclusive. Mrs. Soltys did not qualify because she opted not to become a “Restricted Golf Member.”
In June 1999, Mrs. Soltys made several attempts to play in the Ladies 18 Hole Group Tournaments but was denied inclusion. There were a number of tournaments during 1999 which were opened to GWL members including Mrs. Soltys but she did not participate. She was eligible to play in the Ladies 9 Hole Group Tournaments because of a change in their rules but declined to participate.
On several occasions, Mr. and Mrs. Soltys voiced their concerns about Mrs. Soltys’s exclusion from such tournaments. On October 19, 1999, the Board of Governors informed the Soltys that a hearing would be scheduled regarding the Soltys’ continuation as members due to the “alleged aggressive and inflammatory statements made at various meetings.” A hearing was held on February 15, 2000 and the Soltys were expelled on March 15, 2000.
DISCUSSION
Summary judgment will be granted where there are no genuine issues of material fact and where the record, including the pleadings and affidavits entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party beans the burden of affirmatively demonstrating that there are no triable issues. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).Thenonmoving party cannot defeat a summary judgment motion by resting on the pleadings or merely asserting disputed issues of fact. Lalonde v. Eissner, 405 Mass. 207, 209 (1989). However, for the purposes of a summary judgment, the court will review the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Ford Motor Co., Inc. v. Barrett, 403 Mass. 240, 242 (1988).
I. Count VIII — Discrimination A. G.L.c. 15 IB — Discrimination Claim
The Soltys allege that the WCC discriminated against them in violation of G.L.C. 151B and c. 272 §§92A and 98. They claim Mrs. Soltys was excluded from participa *652 tion in the Ladies 18 Hole Group tournaments even when space was available. She asserts that men similarly situated on the GWL were allowed to play in the mens’ tournaments. WCC denies it discriminated against Mrs. Sollys and states the policy of exclusion was set by the members of the Ladies 18-Hole Group.
Before a plaintiff may file a complaint in the Superior Court, she must first file her complaint with the Massachusetts Commission Against Discrimination (“MCAD”). See G.L.c. 151B, §9; 804 CMR §1.03(4)(a). “An action cannot be brought in the Superior Court under M.G.L.c. 151B, unless it is preceded by the filing of a complaint of unlawful discrimination with the MCAD within six months of the occurrence of the discriminatory event. See. G.L.c. 151B, §5.” Carter v. Commissioner of Correction, 43 Mass.App.Ct. 212, 217 (1997). However, the six-month limitation will not be applied where the unlawful conduct complained of is of a continuing nature, in which case a complaint is timely filed even though the discriminatory action commenced more than six months prior to the challenge. Lynn Teachers Union, Local 1037, AFT, AFL-CIO v. MCAD, 406 Mass. 515 (1990).
A plaintiff who demonstrates a pattern of discrimination that creates a hostile environment which includes conduct within the six-month statute of limitations may claim the benefit of the continuing violation doctrine and seek damages for conduct that occurred outside the limitations period, unless the plaintiff knew or reasonably should have known that her situation was pervasively hostile and unlikely to improve, and thus, a reasonable person in her position would have filed a complaint with the MCAD before the statute ran on that conduct. Cuddyer v. Stop & Shop, 434 Mass. 521, 535 (2001). The exception does not pertain to this case nor is it argued by Mrs. Soltys. The denial by the Ladies 18 Hole Group was a discrete event and does not require “a series of related events to be viewed in their totality in order to assess adequately their discriminatory nature and impact.” Cuddyer v. Stop & Shop, at 531. The Ladies 18 Hole Group rules and regulations were in existence since 1991 and their refusal to allow Mrs. Sollys to participate was the alleged discriminatory act.
The Soltys filed a complaint with the MCAD on January 11,2000 alleging that WCC discriminated between men and women on the GWL. They assert that women on the GWL had fewer rights and privileges than men similarly situated including the exclusion of GWL women from playing in the Ladies 18 Hole Group tournaments.[9]
In May 1999 Mrs. Soltys inquired about her eligibility to play in the Ladies 18 Hole Group tournaments on a space-available basis. During May and June she sent several letters to the chair of the Ladies 18 Hole Group requesting to play in the tournaments. On June 17, 1999 Mrs. Soltys sent a $50.00 check seeking membership in the Ladies 18 Hole Group. The check was returned by Kristine Scoon, Chair of the Ladies 18 Hole Group. On June 29th Ms. Scoon wrote to Mrs. Soltys informing her she was not eligible for membership in the Ladies 18 Hole Group until the Soltyses obtained “full golf privileges.” Ms. Scoon also wrote that Mrs. Soltys was “not eligible to participate in 18 hole tournament play as tournament play is not open to wait list members at this time . . . The women’s 18 hole group . . . has chosen not to open up its tournament to wait list members at this time and the Golf Committee has accepted this decision on an interim basis.”
Mrs. Sollys sent a letter dated July 2,1999 to Kristine Scoon, addressing her perception of a double standard over the years whereby men, who are GWL Members and Certificate Owning Members, were allowed to play in tournaments but not their spouse. Mrs. Soltys categorized such conduct as “seems to be at least unequal treatment and discriminatory.” On July 8, 1999 Mrs. Soltys sent a memorandum together with correspondence regarding these issues to the GWL members complaining about the Ladies 18 Hole Group’s policy and the inequities and inconsistencies of the Club. President Haynes sent a letter to Mrs. Soltys on July 14th stating, “I have reviewed the correspondence between you and the Ladies 18 Hole Group, and at this time concur that you are not eligible to participate in the 18-hole Ladies Championship. As you know, the Board has deferred to the Golf Committee in determining which tournaments are available for wait list play and further, the Golf Committee is in agreement regarding the ladies 18-hole events. I hope this will serve to conclude the matter.”
In Adamczyk v. Augat, Inc., 52 Mass.App.Ct. 717, 720 (2001), the Court wrote that the statute of limitation in a discrimination claim begins to run when the facts to support the claim “are apparent or should be apparent to a person with a reasonably prudent regard for his rights.” Sturniolo v. Sheaffer, Government Dev. Bank of Puerto Rico, 27 F.3d 746, 748-49 (1st Cir. 1994). The Court went on to say, “the proper focus for determining when a statute of limitations period commences is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.” Adamczyk v. Augat, Inc., 52 Mass.App.Ct. at 721, quoting School Comm. of Brockton v. Massachusetts Commn. Against Discrimination, 423 Mass. 7, 11 n.8 (1996). I will assume for the purpose of the statute of limitations argument that the actions of the Ladies 18 Hole Group were discriminatory.
The issue is when did the clock begin to run. The defendants argue the letter of June 29th from Ms. Scoon was clear and unequivocal that Mrs. Soltys could neither join the Ladies 18 Hole Group nor play in their tournaments regardless of Mr. Haynes’s letter of April 9th. WCC supports this contention with the July 2nd letter from Mrs. Soltys to Ms. Scoon where she complains about the “double standard” wherein Certificate Owning GWL men are allowed to play in tournaments but there is unequal and discriminatory *653 treatment of their spouses. Her statement demonstrates that Mrs. Soltys, as reasonably prudent with regard for her rights, possessed facts she knew or reasonably should have known supported her claim.
On June 1, 1999 the Ladies 18 Hole Group changed their rules to allow women on the GWL who had a handicap of 38 or less and had a Restricted Golf Membership to play. Mrs. Soltys was ineligible because even though she had a handicap of lower than 38 she did not have a “Restricted Golf Membership.”
If one assumes Mrs. Sollys was not aware of her predicament by early June, at least by the letters of June 29th and July 2nd the facts were apparent to her that there was a “double standard” and the treatment of women was unequal and discriminatory as compared to their spouses. The letter of Mr. Hayes simply reiterated what was already known to Mrs. Sohys; the Ladies 18 Hole Group tournaments were not open to women on the GWL.
Thus the filing of the complaint with the MCAD on January 11, 2000 occurred more than six months after the alleged discriminatory acts. WCC is entitled as a matter of law to summary judgment on the discrimination claim in Count VIII.
B. G.L.c. 151B — Retaliation Claim
Retaliation is a separate and independent cause of action. M.G.L.c 151B, §4(4), prohibits retaliation by making it unlawful for “any person ... to discharge, expel or otherwise discriminate against a person because he has opposed any practices” forbidden under G.L.c. 151B. See G.L.c. 151B, §4(4A) (it shall be an unlawful practice for “any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right” to complain of discrimination that is prohibited by any provision of G.L.c. 151B). To succeed on a claim of retaliation, “the plaintiff must prove that [she] reasonably and in good faith believed that the [club] was engaged in wrongful discrimination, that [she] acted reasonably in response to [her] belief, and that the [club’s] desire to retaliate against [her] was the determinative factor in its decision to terminate [her membership].” Tate v. Department of Mental Health, 419 Mass. 356, 364 (1995).
In October 1999, WCC notified the Soltys that the club was considering whether their membership was now “detrimental to the best interest of the club.” In a letter dated October 19, 1999, Craig D. Mills, counsel for WCC, sent the Soltys a letter addressing the club’s consideration of their membership. WCC referred to statements made in various letters sent by Mrs. Soltys as well as statements made by Mr. Soltys at various meetings. WCC contends that the Soltys were expelled due to Mr. Soltys’ “volatile and disruptive” behavior at committee meetings. The letter referenced “the purpose,. content and tone of your wife’s letters to Board and Club management” as one of the reasons for a meeting to determine the Soltys’ status. WCC also included the letters written by Mrs. Soltys regarding her inclusion in the Ladies 18 Hole Group Tournaments as disturbing to the club and its purpose. WCC also claimed that Mr. Soltys’s behavior was disruptive. The expulsion hearing was held on February 15, 2000 and the Sollys were expelled on March 15, 2000; after they filed suit with the MCAD. There is no dispute that WCC expelled the Soltys from the club after the filing of their MCAD complaint.[10]
As the Court stated in Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 121 (2000), G.L.c. 151B, §4(4) prohibits retaliation by making it unlawful for “any person ... to discharge, expel or otherwise discriminate against any person because he has opposed any practices” forbidden under G.L.c. 151B. See G.L.c. 151B, §4(4A) (it shall be an unlawful practice for “any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right” to complain of discrimination that is prohibited by any provision of G.L.c. 151B). 1116 presence of retaliation is largely a factual matter for the jury. Bain v. City of Springfield, 424 Mass. 758, 765 (1997).
There is a genuine issue of material fact precluding summary judgment.
C. G.L.c. 272, §98 — Discrimination Claim
Mrs. Sollys alleges sex discrimination in a place of public accommodation pursuant to G.L.c. 272, §98.[11] Instituting such a claim under G.L.c. 15 IB, §5 is not a bar to proceeding under G.L.c. 272, §§92A and 98. Mrs. Sollys is not time barred because of her late filing of the prior claim discussed above with MCAD. See G.L.c. 15 IB, §5, Par. 2.
The plaintiff has three elements to establish for a prima facie case: (1) plaintiff is a member of a protected category under the statute,[12] and (2) plaintiff was denied access to or restricted in the use of (3) a place of public accommodation. There is no dispute that Mrs. Soltys is a member of a protected category under the statute. She was denied access to the Ladies 18 Hole Group Toumaments because she was only a GWL member.[13] As stated above, the Ladies 18 Hole Group did not allow GWL members to play in their tournaments unless they were Certificate Owning Members or Restricted Members. Mrs. Soltys was neither. The issue presented in this claim for discrimination is whether the WCC is a place of public accommodation.
WCC is a nonprofit, charitable organization established in 1910. “In determining whether a facility qualifies as ‘a place of public accommodation,’ there are several factors considered by courts. The most important factor is the selectivity of membership.” See Haskins v. President & Fellows of Harvard College, Civil Action No. 993405 (Mass.Super.Ct. Sept. 18, 2001), 13 Mass. L. Rptr. 691 (Zobel, J.). “Absent a genuine selectivity in choosing members, even a private dub can fall within the ambit of the Public Accommodations Act.” Id. See also Concord Rod & Gun Club, Inc. v. MCAD, 402 Mass. *654 716 (1988). However, other factors to consider in resolving this issue are: (1) membership control; (2) history of the organization; (3) use of the facility by non-members; (4) the extent of revenues from nonmembers; (5) whether the facility advertises to the public; and (6) the formality observed by the club. U.S. v. Lansdowne Swim Club, 713 F.Sup. 785, 796-97 (E.D.Pa., 1989); and Jankey v. Twentieth Century Fox Film, 14 F.Sup. 1174, 1179 (C.D.Cal., 1998).
The membership process at WCC begins first with the submission of an application obtained from an existing Certificate Owning Member. Applicants must be known to or proposed by at least three Certificate Owning Members. Once a prospective member’s application is completed and references received, the person is placed on a waiting list for consideration of membership when a vacancy exists. When an applicant reaches the top of the waiting list, the Board of Governors votes whether to admit the applicant into membership. An applicant will be rejected if two out of 15 adverse votes are cast by Board Members. The selectivity in the membership process indicates genuine exclusivity.
The WCC By-laws vest in the Board of Governors control and management of the Club’s property, membership, entrance fees and dues. In April 1991 two women’s groups were created at WCC to foster golf among women. The women’s groups established their own by-laws, rules and regulations for play in their respective groups. The groups operate separately with their own by-laws, officers and committees to manage their activities. The creation of the women’s groups predated the GWL. The Board of Governors deferred to the two women’s groups to develop their own bylaws, rules and regulations regarding golf for the Ladies 9 and 18 Hole Groups.
In June 1999 both Ladies Groups voted to change their regulations. The Ladies 9 Hole Group allowed women on the GWL to play in their weekly tournaments while the Ladies 18 Hole Group accepted for tournament play women on the “Restricted Golf Membership” list and had a proper handicap. For women who were not members of the either group, WCC sponsored some tournaments open to golf members regardless of gender while others were limited by sex.
The Sollys contend that WCC is a place of public accommodation because it is open to the general public and solicits and accepts the patronage of the general public. WCC budgets income from non-member sources and rents out the golf course for non-member outings. WCC made the golf course available for corporate, charitable, community and golf associated events for a fee. WCC rents out the clubhouse[14] for weddings and functions to non-members but only if the event is sponsored by a member. Non-members are only allowed to use the facilities if invited by a Certificate Owning Member. Although WCC derives revenue from non-member use of its premises, WCC does not advertise to the public the availability of its facilities. See Wanders v. Bear Hill Golf Club, Civil No. 971458 (Mass.Super.Ct. Nov. 30, 1998), 1998 WL 1181150 (Zobel, J.). (In Bear Hill there was neither a genuine selectivity in choosing members nor was general public access restricted; in fact, it advertised to the general public the availability of its banquet service and hosted charitable, corporate and community events.)
The Soltys argue that WCC derives substantial revenue from corporate, charitable, and community organizations for non-sponsored events. In 1999 WCC’s revenue from these groups included only 3.3% of the club’s total revenue. The remaining 11.7% were from non-members who were invited as guests by a WCC member. This is not a significant amount of revenue.
Thus based on the analysis of the aforementioned factors, it cannot be said as a matter of law that WCC is a “place of public accommodation.”[15] WCC’s motion for summary judgment on the discrimination claim under M.G.L.c. 272, §98 is allowed.
II. Intentional and Negligent Misrepresentation (Counts I & II)
WCC argues that it is entitled to summary judgment on Counts I and II alleging intentional and negligent misrepresentation, respectively. WCC contends that these claims are time barred by the three-year statute of limitations period.
The Sollys based these claims on a statement allegedly made to them in May 1995, by the Club’s Admissions Committee that they would receive “full golf privileges within two to three years.” The Soltys claim that the statement was made subsequent to their decision to accept the Club’s invitation for membership. WCC claims that a year later Mrs. Soltys knew, on May 1, 1996, that it was going to take more than three years for her to obtain “full golf privileges.” WCC argues that in May 1996 Mrs. Soltys believed it would take up to ten years, based on the attrition rate, before they would obtain membership. Thus the Sollys would be required by May 1999 to bring either claim. G.L.c. 260, §2A.
However, a misrepresentation accrues at the time a “plaintiff learns or reasonably should have learned of the misrepresentation.” Kent v. Dupree, 13 Mass.App.Ct. 44, 47 (1982). There is a dispute whether the statement was made regarding the waiting period for full golf privileges in two to three years. I shall assume for the purpose of summary judgment the Soltys were told the time period for full membership would occur within two or three years.
When did Mrs. Soliys learn or reasonably should have learned that the wait would be longer than three years? Mrs. Soltys argues she could not actually know of a longer wait period until the three years passed and they still had not received lull golf privileges. In that case they could not have known about the misrepresentation until May 1998. Thus this litigation was filed timely.
Whether Mrs. Sollys reasonably knew in 1996 that the wait for full golf privileges was going to be longer *655 than two to three years is a question of fact for the jury. Summary judgment is denied on Counts I and II.
III.Breach of Contract Claim (Count III)
The Soltys allege that WCC breached the contract. They assert that they paid the initiation fee and bond which was consideration for a promise of full golf privileges by May 1998 but WCC breached its obligations by not installing them to full golf membership. Their claim is based on the allegation that the representative of WCC promised they would be full members within two or three years.[16]
WCC argues it is entitled to summary judgment as a matter of law. WCC contends that a contract was not formed based on the alleged statement and any rights that the Soliys have are governed by the By-Laws.
Under Massachusetts law, interpretation of a contract is ordinarily a question of law for the court. Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (1992); Freelander v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970). An unambiguous contract must be enforced according to its terms and the subjective contemplations of the parties are immaterial. Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992), citing Freelander, 357 Mass. at 516; Blakeley v. Pilgrim Packaging Co., 4 Mass.App.Ct. 19, 24 (1976). The parties are bound by the plain terms of their contract.
To sustain a claim for breach of contract, plaintiffs must show (1) an agreement; (2) valid consideration; (3) performance or its equivalent by the plaintiffs; (4) breach by the defendant; and (5) damages. There is a dispute as to whether the Soliys were ever told by any member of the Club’s Admissions Committee that the GWL would be two to three years. Thus there is a material question of fact in dispute. WCC’s motion for summary judgment is denied on Count III.
IV.Detrimental Reliance (Count IV)
The Soltys claim that they relied on the statement of two to three years for full golf privileges to their detriment. WCC asserts that it was unreasonable for the Soltys to rely on such a statement because it was ambiguous on its face.
“To establish a claim of detrimental reliance, a plaintiff must prove all the essential elements of a breach of contract claim with the exception of consideration.” Hansen v. J.L. Hammett Co., 53 Mass.App.Ct. 1114 (2002), citing Rhode Island Hosp. Trust Natl. Bank v. Varadian, 419 Mass. 841, 850 (1995). In order to survive a motion for summary judgment on a claim of detrimental reliance, the Soliys are required to demonstrate that they reasonably relied upon an unambiguous promise made to them. Joyce v. McDonald, 40 Mass.App.Ct. 1116 (2001), citing Upton v. JWP Businessland, 425 Mass. 756, 760 (1997). The dispute issue as to whether the Soltys reasonably relied on the alleged statement pertaining to the GWL is a question of fact. WCC’s motion for summary judgment on Count IV is denied
V.Breach of Implied Covenant of Good Faith and Fair Dealing (Count V)
WCC argues because no contract was formed between the two parties, there is no breach of implied covenant of good faith and fair dealing.
To support a breach of implied covenant of good faith and fair dealing claim, the plaintiffs must demonstrate the existence of a contract. “Every contract implies good faith and fair dealing between the parties to it.” Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, 362 m.9 (1990), quoting Kerrigan v. Boston, 361 Mass. 24, 33 (1974); see also Levenson v. LMI Realty Corp., 31 Mass.App.Ct. 127, 131 (1991) (holding where parties had not reached a binding contract, the implied covenant of good faith and fair dealing did not apply). The implied covenant of good faith and fair dealing provides “that neither parly shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Anthony Pier Four, Inc. v. NBC Associates, 411 Mass. 451, 471-72 (1991).
This is a question of fact based on the finding of a contract. Summary judgment is denied on Count V.
VI.93A Claim (Count VI)
The Soltys claim a violation of G.L.c. 93A, §9. WCC argues G.L.c. 93A is not applicable to an intra-enterprise relationship between a club and its members. A violation of G.L.c. 93A, §2 requires proof of an unfair or deceptive act or practice “in the conduct of any trade or commerce.” Trade and commerce are defined in §1.
The first issue is whether WCC conducts any trade or commerce. The organizational structure is established in the By-Laws with a Board of Governors operating the property as a golf and recreation facility for its members. As such it is analogous to the position of the trustees in Office One, Inc. v. Lopez, 437 Mass. 113, 125 (2002). There the trustees were members of a volunteer governing board of the organization of unit owners at River Court. The Court held it was evident from the complaint that the 93A claim arose exclusively from the private relationship between the trustees and the plaintiffs as condominium unit owners. Id. at 125. Transactions that are “principally private in nature... do not fall within the purview of G.L.c. 93A.” Id. at 125, citing Zimmerman v. Bogoff, 402 Mass. 650, 662 (1988). See also Riseman v. Orion Research Inc., 394 Mass. 311, 313-14 (1985). The trustees were not engaged in any trade or commerce.
Similarly, WCC, through its Board of Governors, cannot be said to be engaging in any trade or commerce.
WCC asserts that the Soltys are time barred from bringing a claim pursuant to G.L.c. 93A. This issue need not be addressed in light of the foregoing. WCC’s motion for summary judgment on Count VI is allowed.
VII.Breach of Fiduciary Duty (Count IX)
The Soltys allege that the individual members of the Board of Governors at WCC owed them a fiduciary *656 duty. They claim the individual members breached the fiduciary duty by refusing to provide full golf membership to them and expelling them from the WCC without the proper proceedings. WCC argues no fiduciary relationship exists between the parties.
A fiduciary relationship may arise from a special relationship or from when one person places particular trust and confidence in another. Hawkes v. Lackey, 207 Mass. 424, 432 (1911). To establish a prima facie case for breach of fiduciary duty, plaintiffs must prove that the individual defendants each owed a duty to the plaintiffs, that the duty was breached, and that the plaintiffs suffered damages as a result of the breach. Beaconsfield Townhouse Condominium Trust v. Zussman, 49 Mass.App.Ct. 757 (2000); Hanover Ins. Co. v. Sutton, 46 Mass.App.Ct. 153, 164 (1999).
As the Court said in Office One, Inc. v. Lopez, 437 Mass. at 125: “[T]he plaintiffs cannot succeed on this claim, however, because, as matter of law, members of a governing board of a condominium association, in the capacity of the trustees here, owe no fiduciary duty to individual condominium unit owners." The Soltys cannot prove a special relationship between the Board of Governors and themselves. Here, the individual defendants owed a fiduciaiy duty to the Club, not to Mr. & Mrs. Soltys. Therefore, the individual defendants’ motion for summary judgment is allowed.
ORDER
The Wellesley Country Club’s motion for summary judgment is allowed on Count VIII, the discrimination claims pursuant to c. 15 IB and c. 272 §98 and is denied on the c. 15 IB retaliation claim. Its motion is also denied on Counts I, II, IV, and V. No action is taken on the request for summary judgment on Count III — specific performance, as that is left to the trial judge. The individually named defendants’ motion for summary judgment is allowed on Count IX. Thomas Soltys’ and Mary Ann Soltys’ motion for summary judgment on Count VIII is denied.

Count VII alleges a violation of the Massachusetts Civil Rights Statute, G.L.c. 12, §111 against WCC.

The Admissions Chairperson, Owen Dugan, informed GWL members one of their privileges was participation in tournaments where space was available.

Owning Members with golf memberships are entitled to “preferred tee times” on Wednesday afternoons, Saturday, Sunday, Holiday mornings and may play at all times when the course is open, except when groups to which they do not belong have preference. A Certificate Owner can be either spouse or both spouses may purchase a Certificate independent of the other. If a spouse applies to become an independent Certificate Owner he/she immediately goes to the top of the membership waiting list. In addition, a Certificate Owner may transfer his/her Certificate Owning Golf Privileges to the other spouse, subject to approval by the Board, without relinquishing his/her other rights under the Certificate.
The spouse of a Certificate Owner who is eligible for a golf membership may, but is not required to, also obtain a golf membership which is entitled “Spouse Golf.” Spouse Golf Members may play only during the “preferred tee times” reserved for Certificate Owning Golf Members, if space is available. Spouse Golf Members may not play when groups to which they do not belong have preference.

These groups were created by the women golf members of WCC and are guided by the By-Laws adopted in April 1991, prior to the establishment of the Golf Wait List. These groups operate separately with their own officers and committees which manage their membership and determine how to organize and conduct their events and tournaments.

In 1995 and 1996, GWL Members were entitled to play twice per month for payment of a greens fee for each round played. GWL Members were entitled to play most Monday afternoons in July and August without payment of the greens fee. In addition they were entitled to play once a month as a guest of a full golf member. However, during these two years GWL Members were not allowed to bring guests.
In 1997, GWL Members were allowed to play golf twice a month on available Monday afternoons throughout the season for payment of a greens fee. They were also entitled to bring up to three guests per month on Monday but could not play on Sunday afternoons. Certificate Owning Members on the GWL could utilize their GWL privileges during the “preferred” tee times available only to Certificate Owners on Wednesday afternoons and weekend and Holiday mornings. Spouse GWL Members could not utilize the course during these times unless space was available.

The privileges include: the same as current wait list plus these members may bring up to 3 guests per month Monday through Thursday and greens fee apply. Restricted Golf Members were allowed to play 3 additional rounds Tuesday through Thursday, per month starting 6/1/00. Restricted Golf Members were allowed unlimited weekday play after Columbus Day at the discretion of the Pro Shop. It did not affect the GWL male members’ ability to play in the tournaments on a space-available basis.

Mrs. Soltys, an avid golfer, satisfied the handicap requirement.

In May 1995 Mrs. Soltys discussed this issue with Robert MacEwen, the Golf Chair. She expressed her concern of being treated differently than the men on the GWL. Men could play in the tournaments but she could not play in any tournaments sponsored by the Ladies Groups.

The statute of limitations is not an issue on the claim for retaliation.

M.G.L.c. 272, §92A defines a “place of public accommodation, resort or amusement” to include “any place, whether licensed or unlicensed, which is open to and accepts or solicits the patronage of the general public, and includes a place of public amusement, recreation, sport, exercise or entertainment.” The statute provides a nonexclusive list of examples, without limiting the generality of the definition.

Mr. Soltys is not a member of a protected class. His claim is dismissed.

I shall assume for this claim of discrimination that Mrs. Soltys was denied access resulting in sex discrimination.

WCC’s website features the dining facility for weddings and functions.

Even if one could argue that certain factors may tend toward WCC being a place of public accommodation, Mrs. Soltys cannot sustain her burden of sex discrimination by either WCC or the Ladies 18 Hole Group.

This contention is disputed by WCC, thereby raising a genuine issue of material fact.