MATTHEW ADAMCZYK *vs.* AUGAT, INC.
(and a companion case[1]).

Nos. 99-P-329 & 99-P-1000.

Barnstable. February 27, 2001. - October 3, 2001.

Present: GREENBERG, BECK, & RAPOZA, JJ.

*Anti-Discrimination Law,* Age, Termination of employment. *Practice, Civil,* Summary judgment. *Limitations, Statute of.*

On motions for summary judgment at the trials of civil complaints alleging age discrimination by a corporation when it closed a plant, claims brought more than nine months after the corporation's written notice to the plant workers establishing the date of the closure and the employees' release dates were time-barred, because the notice was sufficiently clear, and additional information in the notice raising the possibility of continued employment through employee transfers to another facility did not toll the statute of limitations. [720-724]

Plaintiffs in age discrimination in employment cases failed to demonstrate that the applicable statute of limitations was equitably tolled by the actions of their employer. [724]

CIVIL ACTIONS commenced in the Superior Court Department on July 11, 1997, and April 6, 1998, respectively.

The cases were heard by *Gerald F. O'Neill, Jr.,* J., on motions for summary judgment.

*Denise A. Chicoine* for the plaintiffs.

*Mary Jo Johnson* (*Lisa Stephanian Burton* with her) for the defendant.

GREENBERG, J. By a memorandum dated December 20, 1995, the defendant, Augat, Inc. (Augat), notified all employees, including the plaintiffs in these two consolidated appeals, that "[a] target date of September 30, 1996 has been established as the closure date for the Mashpee plant." In separate Superior Court actions, the plaintiffs complained that Augat selected the

---

[1]Dorothy O'Brien & Matthew P. Bunnell *vs.* Augat, Inc.

Mashpee facility for closure because its work force consisted of a significant number of older workers.[2] The same Superior Court judge granted summary judgment in favor of Augat in each case, and the plaintiffs appeal.

1. *The procedural history.* The plaintiffs Matthew P. Bunnell and Dorothy O'Brien filed individual age discrimination charges with the Massachusetts Commission Against Discrimination (MCAD) six days apart: Bunnell on September 24, 1996, and O'Brien on September 30, 1996. The plaintiff Matthew Adamczyk's complaint to the MCAD followed on October 11, 1996. Approximately 124 other employees filed similar charges with the MCAD around the same time, claiming that the decision to close the facility was made in violation of G. L. c. 151B, § 4(1B).

On February 12, 1997, the MCAD notified Adamczyk, O'Brien, and other employees over the age of forty that it was transferring the investigation of all charges to the Federal Equal Employment Opportunity Commission (EEOC). The MCAD retained jurisdiction of the charges brought by Bunnell and other employees who were under forty years of age.

On May 22, 1997, plaintiffs' counsel requested withdrawal of charges pending before both the MCAD and the EEOC. However, on July 31, 1997, the EEOC issued a dismissal and notice of suit rights to all of the Augat employees with pending complaints, including the plaintiffs Adamczyk and O'Brien. Upon investigation, the EEOC determined that "it is unlikely further investigation of this charge would result in a finding that there is a reasonable cause to believe that [the statute] was violated." EEOC's preliminary investigation report concluded that Augat presented "legitimate, non-discriminating reasons for deciding which facility to close."[3]

On Adamczyk's complaint to the Superior Court, a judge

---

[2]The plaintiffs sought class action certification pursuant to Mass.R.Civ.P. 23(a), 365 Mass. 767 (1974). However, a Superior Court judge ruled that they failed to satisfy the prerequisites and denied the requested certification.

[3]The MCAD also issued a finding. On December 29, 1998, the MCAD addressed the complaints of the thirty-seven former employees under forty years of age who originally filed charges of discrimination, including Bunnell. The MCAD's December 29, 1998, notice to Bunnell concluded that he presented no claim under G. L. c. 151B for age discrimination because those protections

ruled that his claim was time-barred under G. L. c. 151B, § 4(1B), because he did not file a timely discrimination charge with the MCAD. Shortly thereafter, the same judge dismissed the O'Brien and Bunnell complaint for the same reason. As to Bunnell, the judge also ruled that he could not make a prima facie case of age discrimination under G. L. c. 151B because he was under the age of forty.

2. *The facts.* The facts are, to a large extent, not in dispute. On December 20, 1995, Augat announced its decision to close the Mashpee facility at a plant-wide meeting attended by its employees. At that meeting, all employees of the Mashpee facility, including the three plaintiffs, were informed that, as of September 30, 1996, the Mashpee facility would officially close; two of its product lines would be sold to another company, and remaining operations would be consolidated with Augat's Sanford, Maine, and Lugano, Switzerland, operations.

That same day, Sam Smookler, then vice-president and general manager of Augat's interconnection products division, distributed a memorandum and a letter to all employees explaining why Augat had decided to close the Mashpee facility. Augat had formed a task force in March of 1995 to study different options to improve profitability and, after several months of study, the task force had concluded the Mashpee facility should be closed. The memorandum noted that the Mashpee facility produced the two product lines scheduled to be sold and stated that a significant portion of the Mashpee facility's remaining production capabilities were duplicative of production capabilities at other Augat plants. The memorandum stated, in pertinent part: "A target date of September 30, 1996 has been established as the closure date for the Mashpee plant. . . . [D]etailed plans for the transition will be reviewed with each affected employee. Employees at the Mashpee plant are being notified today of our decision to close the plant. . . . [W]e will make every effort to provide job transfer opportunities to other [Augat] facilities for those interested." The accompanying letter also stated in pertinent part: "As your release date approaches you will be

do not extend to persons under forty: "an individual must be forty years of age or older at the time of an alleged discriminatory employment action to be covered" under the age discrimination provisions of chapter 151B. .

contacted by Human Resources for a detailed review of your benefits and the continuation options that exist as well as out-placement assistance . . . ."

On February 1, 1996, in light of the pending plant closure, Augat sent additional letters that were individually addressed to each employee at the Mashpee facility. These February 1, 1996, letters reaffirmed that the plant was closing and that their employment with Augat would end. Adamczyk and O'Brien, like most Augat employees, received a notice stating that their "release dates" from Augat were to occur by September 30, 1996. Bunnell, who worked in the small systems and test department, received notice confirming that his department either would be discontinued by Augat or sold to a new owner — either way, his employment with Augat was scheduled to end. Bunnell's, O'Brien's, and Adamczyk's last dates of employment were September 9, September 30, and October 11, 1996, respectively.

3. *Analysis.* We commonly apply Federal law construing Federal antidiscrimination statutes in interpreting G. L. c. 151B. See, e.g., *School Comm. of Brockton* v. *Massachusetts Commn. Against Discrimination*, 423 Mass. 7, 11 n.8 (1996). Some Federal courts have held that a limitations period for a discrimination claim starts to run once the facts that support the claim "are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Sturniolo* v. *Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir. 1994). See *Morris* v. *Government Dev. Bank of Puerto Rico*, 27 F.3d 746, 748-749 (1st Cir. 1994). Failure to comply with the six-month limitations period results in barring the claimant from proceeding with a civil employment discrimination claim. See *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 583 (1994). See also *Williams* v. *Raytheon*, 220 F.3d 16, 20 (1st Cir. 2000). The plaintiffs' argument is that the December 20, 1995, memorandum and accompanying letter contained equivocal language regarding the prospective date of termination. They characterize Augat's representations as "misleading" and contend that their claims were filed within six months of September 30, 1996, the official date of the Mashpee plant's closing or, in the alternative, within six months of the dates of their respective terminations ("release dates").

From the material submitted by Augat in support of its summary judgment motions, a different picture emerges. Augat points out that the December 20, 1995, memorandum and the accompanying cover letter state with certainty that the Mashpee plant will close on September 30, 1996, and that the plaintiffs received specific release dates.

The question is whether the additional information in the memorandum raising the possibility of employee transfers to another facility tolled the statute of limitations. We conclude that, under these circumstances, Augat's notice to the plaintiffs of the plant closure was sufficiently clear and that the prospect of continued employment did not toll the statute of limitations. Because we affirm the dismissal of the plaintiffs' claims based on their untimeliness, we need not reach plaintiff Burnell's additional appeal of the judge's ruling that age discrimination claims could not be brought by plaintiffs under forty years of age.[4]

"[T]he proper focus [for determining when a statute of limitations period commences] is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *School Comm. of Brockton* v. *Massachusetts Commn. Against Discrimination*, 423 Mass. at 11 n.8 (emphasis in original), quoting from *Delaware State College* v. *Ricks*, 449 U.S. 250, 258 (1980). In the *Ricks* case, a professor alleged national origin discrimination under Title VII and 42 U.S.C. § 1981, arising from the college's decision to deny him tenure. When the college notified him that tenure had been denied, it gave him a final, one-year terminal contract. At issue was whether the statute of limitations began to run when the college notified him of the tenure decision or, as he argued, one year later, on the actual date of his termination. The Supreme Court held: "In sum, the only alleged discrimination occurred — and the filing limitations periods therefore commenced — at the time the tenure decision was made and communicated to

---

[4]The plaintiffs also contend that the judge erred in ruling that their breach of good faith and fair dealing claims were preempted by G. L. c. 151B. We agree with the Superior Court judge's determination that in this instance, the claims for the breach of the covenant of good faith and fair dealing are preempted by G. L. c. 151B. See, e.g., *Green* v. *Wyman-Gordon Co.*, 422 Mass. 551, 555, 558 (1996).

Ricks. That is so even though one of the *effects* of the denial of tenure — the eventual loss of a teaching position — did not occur until later." *Id.* at 258. (Emphasis in original.) "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257. Here, the plaintiffs allege that Augat selected its Mashpee facility for closure because it determined that the Mashpee work force consisted of a significant number of older workers. Like the tenure decision in *Delaware State College* v. *Ricks, supra,* the alleged discriminatory act was the selection and announcement of the Mashpee facility for closure, not the plaintiffs' termination dates.

In opposition to the defendant's motions for summary judgment, the plaintiffs furnished the documents that they received on December 20, 1995. Although these materials contain Augat's statements holding out the possibility of jobs in other plants, when read in context, they do not create the uncertainty the plaintiffs profess. For example, the plaintiffs note that Augat's letter informed them that "continuation options . . . exist." This quoted fragment,[5] however, is part of a full paragraph that, far from leading employees to believe that they might be retained, reinforces the impending closure of the plant. The subject of the letter was the benefits that each employee would receive due to the closing. For its part, Augat's statement that it would attempt to provide job opportunities cannot be construed as an equivocal termination notice. Contrast *Wheatley* v. *American Tel. & Tel. Co.,* 418 Mass. 394, 399 (1994).

In *Wheatley,* an employee who had been "declared surplus" by management claimed age discrimination under G. L. c. 151B. *Id.* at 396 n.6. The notice consisted of a single conversation and a letter stating that he would be terminated "if he were unable to secure another position within AT&T [after ninety days]." *Id.* at 396. The plaintiff argued that, in granting AT&T summary judgment, the judge erred because it was a question of fact whether the termination notice was sufficiently "unequivocal"

---

[5]The entire sentence reads as follows: "As your release date approaches you will be contacted by Human Resources for a detailed review of your benefits and the continuation options that exist as well as outplacement assistance."

to trigger the statute of limitations. The *Wheatley* court agreed and held that the plaintiff reasonably refrained from filing an age discrimination charge during the ninety-day "transition period" because "[t]he filing of such a charge may prejudice any pending reconsideration of the [termination] decision." *Id.* at 399 n.8, quoting from *Ricks*, 449 U.S. at 266 n.2 (Stevens, J., dissenting). By contrast, in the instant case, all of the employees received more than one letter affirming the pending termination of the entire plant's work force. There was no analogous transition period. The situation is, therefore, distinguishable. An employee in this situation could not reasonably expect that reassignment assistance meant that the employer might change the decision regarding the closure. (See Simmons *vs.* Allsteel, Inc., U.S. Dist. Ct., No. 95-C-3049 [N.D. Ill. Nov. 12, 1999], where the alleged discriminatory act was the employer's decision permanently to close a particular facility. A delay in the implementation of the closure decision was held not to toll the running of the statute of limitations. Instead, the period began to run as soon as the plaintiffs were notified of the allegedly discriminatory decision.)

In the instant cases, there is no genuine issue as to the date of the alleged discriminatory act or as to the plaintiffs' cognizance of their prospective termination dates.[6] See *Ching* v. *Mitre Corp.*, 921 F.2d. 11, 14-15 (1st Cir. 1990) (statute triggered when employee notified of decision to terminate); *Watson* v. *Eastman Kodak Co.*, 235 F.3d 851, 857 (3rd Cir. 2000) (statute triggered by receipt of letter of pending termination despite implementation delay and expressed possibility that plaintiff could transfer to another division); Simmons *vs.* Allsteel, *supra* at 11 (statute triggered by announcement of decision to close plant and not tolled until plaintiffs were actually released). See also *Cooper* v. *Saint Cloud State Univ.*, 226 F.3d 964, 967 (8th Cir. 2000) (statute triggered by notice of decision to terminate despite conditional nature of termination).

---

[6]Even if we construe the December 20, 1995, notice as equivocal, additional notices were given on February 1, 1996. These notices informed the plaintiffs of the Mashpee plant closure and made no mention of the possibility of other employment within the company. Timely charges with the MCAD would then have required filing by the plaintiffs no later than August 1, 1996, which did not occur.

Finally, we note that in *Wheatley*, there was a genuine issue of material fact about the expiration of the limitations period, because the employee's summary judgment materials demonstrated that he became aware of the employer's alleged discriminatory act by a memorandum issued ten days after his actual termination indicating, for the first time, that work formerly performed by the plaintiff had been transferred to younger employees. Here, no such dispute exists.

There is nothing to the plaintiffs' argument that the statute of limitations should be "equitably tolled." The plaintiffs have failed to demonstrate that Augat made affirmatively misleading statements to lull them into not asserting their claims. Courts apply the principle of equitable tolling sparingly in employment discrimination cases. See *Jensen* v. *Frank*, 912 F.2d 517, 521 (1st Cir. 1990); *Andrews* v. *Arkwright Mut. Ins. Co.*, 423 Mass. 1021, 1022 (1996); *Shafnacker* v. *Raymond James & Assocs.*, 425 Mass. 724, 728 (1997). See also *Morris* v. *Government Dev. Bank of Puerto Rico.*, 27 F.3d at 750. So far as it appears from the record appendix, there is no probative evidence that Augat affirmatively misled the plaintiffs with respect to the plant closure or that the plaintiffs were unaware of the alleged age discrimination. See *Kale* v. *Combined Ins. Co.*, 861 F.2d 746, 752 (1st Cir. 1988); *Price* v. *Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982); *Unterreiner* v. *Volkswagen of America, Inc.*, 8 F.3d 1206, 1212-1213 (7th Cir. 1993). See also *Wilson* v. *Westinghouse Elec. Corp.*, 838 F.2d 286, 288 (8th Cir. 1988); *Wagner* v. *Sperry Univac*, 458 F. Supp. 505, 512 (E.D. Pa. 1978), aff'd, 624 F.2d 1092 (3d Cir. 1980), to the same effect.

*Judgments affirmed.*