# United States Court of Appeals
## For the First Circuit

No. 08-1655

NATHANIEL ABRAHAM,

Plaintiff, Appellant,

v.

WOODS HOLE OCEANOGRAPHIC INSTITUTE, and MARK E. HAHN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before
Lynch, Chief Judge,
Howard, Circuit Judge,
and Garcia-Gregory,[*] District Judge.

David C. Gibbs III, with whom Gibbs Law Firm, P.A. and Denise Minor were on brief for appellant.
Robert M. Hale, with whom Goodwin Procter LLP, and Itia S. Roth were on brief, for appellees.

January 22, 2009

---

[*]    Of the District of Puerto Rico, sitting by designation.

**GARCIA-GREGORY, <u>District Judge</u>**.  Appellant Nathaniel Abraham ("Dr. Abraham") appeals the denial of his motion for leave to file an amended complaint, and the district court's decision not to apply equitable tolling principles in granting a motion for judgment on the pleadings filed by Appellees Woods Hole Oceanographic Institution ("WHOI") and Mark E. Hahn ("Dr. Hahn")(collectively "Defendants"). For the reasons set forth below, we find that Dr. Abraham's appeal lacks merit. Dr. Abraham's request to amend is futile. Furthermore, the doctrine of equitable tolling cannot be applied because Dr. Abraham failed to exercise diligence in meeting any of the filing deadlines for his employment discrimination claim. Accordingly, the district court's judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

As this appeal arises from a dismissal pursuant to a motion for judgment on the pleadings under Federal Rules of Civil Procedure 12(c), we recite the facts in the light most favorable to Dr. Abraham as non-movant, drawing all reasonably supported inferences in his favor. <u>Perez-Acevedo</u> v. <u>Rivero-Cubano</u>, 520 F.3d 26, 29 (1st Cir. 2008).

On October 12, 2004, Dr. Abraham began employment at WHOI to work as a Postdoctoral Investigator in Dr. Hahn's laboratory at WHOI on a research grant funded by the National Institute of Health ("NIH"). Dr. Abraham, a citizen of the Republic of India, was

employed by the WHOI as an expert on zebrafish developmental biology. His employment consisted of researching the molecular biological aspect of zebrafish. On October 21, 2004, approximately one week after his paid employment status began, Dr. Abraham stated to his supervisor at WHOI, Dr. Hahn, that he was a Christian and that he did not believe in the theory of evolution. Dr. Abraham's disbelief in the theory of evolution created a conflict with Dr. Hahn's vision of how Dr. Abraham's work should be carried out and interpreted. According to Dr. Hahn, Dr. Abraham's disbelief in the theory of evolution was incompatible with the work as proposed to NIH.

As a result, on November 17, 2004, in a meeting with Dr. Hahn and WHOI's Human Resource Manager, Kathleen La Bernz, Dr. Abraham was asked to resign. On that date, Dr. Hahn also presented Dr. Abraham with a letter informing him that he could either resign immediately and accept a severance package or continue working with WHOI until he found another post doctoral position. The letter indicated that if Dr. Abraham chose the latter option he could work until no later than January 31, 2005 at which point he must resign (hereinafter referred to as the "November 17, 2004 letter").

On November 19, 2004, Ms. La Bernz provided Dr. Abraham with a proposed General Release, and encouraged him to sign it in order to receive the lump sum. Dr. Abraham did not resign the next day. On November 22, 2004, Ms. La Bernz emailed to Dr. Abraham the

-3-

release document, which included a twenty-one (21) day consideration period that was not previously mentioned. Additionally, on that date, Dr. Hahn via email indicated to Dr. Abraham that there would be no reconsideration of his staying at WHOI. The parties agreed to meet the next day.

On November 23, 2004, Dr. Hahn and Ms. La Bernz met with Dr. Abraham. At the meeting, Dr. Abraham was given several "options" all of which provided that his employment would end by no later than January 31, 2005. Furthermore, Dr. Abraham was read the release document which specified that he had twenty-one (21) days to resign in order to receive the severance package. Dr. Abraham did not resign and on December 14, 2005, WHOI terminated his employment.[1]

---

[1] On or about May 27, 2005, Dr. Abraham filed a complaint with the Massachusetts Commission Against Discrimination (the "MCAD") alleging religious discrimination and providing a Queens Village, New York address. Pursuant to the MCAD's work-sharing agreement with the Equal Employment Opportunity Commission ("EEOC"), the MCAD transmitted a copy of the complaint to the EEOC. On or about June 21, 2006, the MCAD issued a Dismissal and Notification of Rights (the "MCAD Dismissal Notice") dismissing the MCAD complaint. The MCAD Dismissal Notice indicated that the determination would be forwarded to the EEOC. On November 9, 2006, Dr. Abraham appealed the MCAD's determination via a request letter containing a Lynchburg, Virginia address. Dr. Abraham's appeal was subsequently denied.

On November 24, 2006, the EEOC mailed to Dr. Abraham's address in New York, a Dismissal and Notification of Rights, which indicated that the EEOC was adopting the findings of the MCAD and closing its file on his charge ("EEOC First Dismissal Notice"). On February 22, 2008, the EEOC mailed a letter to WHOI, Dr. Abraham, and his counsel informing them that the EEOC First Dismissal Notice was rescinded and included a new Dismissal and Notice of Rights ("EEOC Second Dismissal Notice").

On December 3, 2007, Dr. Abraham filed before the United States District Court for the District of Massachusetts a single count complaint against Defendants based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").[2] On January 31, 2008, Appellees filed a motion for judgment on the pleadings arguing that Dr. Abraham's Title VII claim was time barred because it was filed more than ninety (90) days after his constructive receipt of the EEOC First Dismissal Notice and because the doctrine of equitable tolling did not apply to the case.

On March 11, 2008, Dr. Abraham sought leave to file an amended complaint asserting the timeliness of his Title VII claim and adding a claim under Mass. Gen. Laws ch. 151B ("151B"). The district court denied Dr. Abraham's request to amend as futile and granted Defendants' motion for judgment on the pleadings on the grounds that Dr. Abraham's claims were time barred. Furthermore, the district court granted Defendants' motion for judgment on the pleadings with respect to the claims against Dr. Hahn on the basis of Defendants' motion that there was no basis for individual liability under Title VII.[3] Dr. Abraham now appeals the district

---

[2] "Title VII is a vehicle through which an individual may seek recovery for employment discrimination on the grounds of race, color, religion, gender, or national origin." Franceschi v. United States VA, 514 F.3d 81, 85 (1st Cir. 2008).

[3] Dr. Abraham's claims against Dr. Hahn are not at issue here because Dr. Abraham does not appeal from the district court's decision denying his claims against Dr. Hahn. Playboy Enters. v. Public Serv. Comm'n, 906 F.2d 25, 40 (1st Cir. 1990) (finding that

-5-

court's denial of his motion to add a 151B claim and its refusal to apply equitable tolling to his Title VII claim.[4]

## DISCUSSION

### I. Request to Amend Complaint

This court will review the district court's denial of Dr. Abraham's motion for leave to amend the complaint for abuse of discretion. Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 98 (1st Cir. 2007). Rule 15(a) of the Federal Rules of Civil Procedure provides in part that leave to amend pleadings "shall be freely given when justice so requires." The leave sought should be granted unless the amendment would be futile or reward undue delay. Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006). "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." Boston & Me. Corp. v. Hampton, 987 F.2d 855, 868 (1st Cir. 1993); see also Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st

an appellant waives any issue which he does not raise in his initial brief).

[4] The district court also held that the EEOC Second Dismissal Notice did not confer any new rights to Dr. Abraham because it was not issued in conformity with the EEOC regulations. Dr. Abraham did not appeal the district court's order finding that the EEOC Second Dismissal Notice did not confer any new rights. Therefore, this court need not address whether said order was proper. KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 25 (1st Cir. 2003) (noting that an issue which is not adequately raised in the initial brief is deemed waived).

Cir. 1996)(finding that "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted").

The law is well settled that a civil action under 151B must be filed within three years of the alleged unlawful act. Cuddyer v. Stop & Shop Supermarket Co., 750 N.E.2d 928, 936 n.11 (2001)(citing Mass. Gen. Laws ch. 151B, § 9). "[T]he proper focus [for determining when a statute of limitations period commences] is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." School Comm. v. Mass. Comm'n Against Discrimination, 666 N.E.2d 468, 472 n.8 (1996)(citing Delaware State College v. Ricks, 449 U.S. 250, 258 (1980)). Accordingly, in 151B discrimination claims, the three year statute of limitations period begins to run upon the notice of an upcoming termination of employment rather than when the termination occurs. Adamczyk v. Augat, Inc., 755 N.E.2d 824, 828-829 (2001); see also Ricks, 449 U.S. at 258-259; Williams v. Raytheon Co., 220 F.3d 16, 20 (1st Cir. 2000); Ching v. Mitre Corp., 921 F.2d 11, 14-15 (1st Cir. 1990).

Dr. Abraham argues that since his employment was terminated on December 14, 2004 and because his proposed amendment would relate back to the filing of his complaint before the

district court on December 3, 2007,[5] his 151B claim falls within the three year statute of limitations period. According to Dr. Abraham, he did not believe he would be terminated at any time prior to December 14 because he thought that he could solve his problems with Dr. Hahn. Specifically, Dr. Abraham claims that the termination threats were made to force him to renounce his religious beliefs in creation and to accept a belief in evolution as fact rather than theory.[6]

Essentially, Dr. Abraham argues that the three year statute of limitations period commenced when he finally "understood" that he was terminated. However, as mentioned above, under Ricks the limitation period commences at the time the adverse employment decision is made and communicated to the employee. Ricks, 449 U.S. at 258-259. In the present case, the three year statute of limitations period began to accrue when he was given notice that he would no longer be working with WHOI. We find that

---

[5] The "relation back doctrine" derives from Federal Rule of Civil Procedure 15(c) whereby amended pleadings may be deemed to "relate back" for statute of limitations purposes to the date of the pleading if certain conditions are met. Marcoux v. Shell Oil Prods. Co. LLC, 524 F.3d 33, 41 (1st Cir. 2008). Pursuant to Rule 15(c)(1)(B), an amended complaint relates back to a prior complaint where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out--in the original pleading."

[6] "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." Ricks, 449 U.S. at 257.

-8-

Dr. Abraham had such notice before December 2004. First, we note that the November 17, 2004 letter indicated to Dr. Abraham that he could either resign immediately and receive a severance package or continue working up to January 31, 2005. In his MCAD complaint, Dr. Abraham acknowledged that he received this "notice" when he stated that he was asked to resign on November 17, 2004. Additionally, on November 22, 2004, Dr. Hahn informed Dr. Abraham that there would be no reconsideration of his staying at WHOI. Furthermore, on that date, Dr. Abraham was given a General Release, which indicated that he had to voluntarily resign within twenty-one (21) days in order to receive a severance package. The release document was read to Dr. Abraham at a meeting on November 23, 2004 and on that date, Dr. Abraham was also handed a set of options all of which involved termination from employment no later than January 31, 2005. Thus, in the month of November 2004, Dr. Abraham received at least four (4) unequivocal termination notices. An employee in this situation could not reasonably conclude that WHOI would not go through with the termination.

Dr. Abraham seeks to convince this court otherwise by arguing that it was reasonable for him to think that the notices were bluffs, a mere tactic used to force him to renounce his religious beliefs in creation and to accept a belief in evolution as fact rather than theory. However, this argument is unavailing.

The unequivocal notices of an upcoming termination, which Dr. Abraham received, leave no doubt that he had knowledge of Defendant's alleged discriminatory act prior to December 2004. See Adamczyk, 755 N.E.2d at 829 (holding that there could be no genuine issue as to the date of the alleged discriminatory act or as to the employees' cognizance of their prospective termination dates because they received more than one unequivocal notice of termination).[7] Accordingly, we find that the district court did not abuse its discretion in not allowing Dr. Abraham to amend his complaint to include a 151B claim because said amendment would be futile since the claim would be time barred even if it was allowed to relate back to the filing of the complaint on December 3, 2007. We now turn our attention to Dr. Abraham's argument that the doctrine of equitable tolling should apply to his Title VII claim.

## II. Equitable Tolling

In the present case, there can be no doubt that Dr. Abraham filed an untimely Title VII claim. Before filing a Title

---

[7] Equivocal notices of termination do not trigger the statute of limitations for a 151B claim. An example of an equivocal notice of termination can be found in Wheatley v. American Tel. & Tel. Co., 636 N.E.2d 265, 268-269 (1994), where the Supreme Judicial Court of Massachusetts held that there was a genuine issue as to whether the employer knew or should have known that he would be terminated from his employment. The court found that the notice received by the employee, which consisted of a single conversation and a letter stating that he would be terminated if he were unable to secure another position within the company after ninety (90) days, was not sufficiently unequivocal to trigger the statute of limitations for a 151B claim. Id.

VII claim, an employee must first exhaust administrative remedies, a process that begins with the filing of an administrative charge before the EEOC. Franceschi, 514 F.3d at 85. Dr. Abraham satisfied this first requirement when he filed a complaint with the MCAD, which was forwarded to the EEOC pursuant to the work sharing agreement between the two agencies. After filing the administrative complaint, the employee may sue in federal court only if the EEOC dismisses the administrative charge or if it does not bring a civil suit or enter into a conciliation agreement within 180 days of the filing of the administrative charge. Id. (citing 42 U.S.C. § 2000e-5(f)(1)). However, the employee must wait for what is known as a right-to-sue letter. Id. After receiving the right-to-sue letter, the employee has ninety (90) days to file a complaint in federal court. Id. (citing 42 U.S.C. § 2000e-5(f)(1)).

Here, the EEOC First Dismissal Notice was issued on November 24, 2006. Dr. Abraham's complaint was untimely filed on December 3, 2007, more than a year after the EEOC First Dismissal Notice was issued. Rather than claiming that he filed the complaint in a timely manner, Dr. Abraham argues that he should be entitled to equitable tolling.[8]

---

[8] In the case at hand, Defendants and not Dr. Abraham raised for the first time the equitable tolling argument in their motion for judgment on the pleadings. Defendants anticipated any argument as to the applicability of the equitable tolling doctrine to the case at bar. Dr. Abraham responded to Defendants' motion and argued that the doctrine of equitable tolling was applicable. Thus, Dr. Abraham "squarely and timely raised in the trial court" his

-11-

"Equitable tolling is available 'in exceptional circumstances' to extend the statute of limitations." <u>Vistamar, Inc.</u> v. <u>Fagundo-Fagundo</u>, 430 F.3d 66, 71 (1st Cir. 2005). In order for equitable tolling to apply, the plaintiff must show that circumstances beyond his or her control precluded a timely filing. <u>Monrouzeau</u> v. <u>Asociacion Del Hosp. Del Maestro, Inc.</u>, 153 Fed. Appx. 7, 9 (1st Cir. 2005). However, equitable tolling is sparsely applied and cannot be used to rescue a plaintiff from his or her lack of diligence. <u>Cao</u> v. <u>Puerto Rico</u>, 525 F.3d 112, 115 (1st Cir. 2008). Thus, an employee is generally not entitled to avail himself or herself of the doctrine of equitable tolling if the procedural flaw that prompted the dismissal of his or her claim is of his or her own making. <u>Jorge</u> v. <u>Rumsfeld</u>, 404 F.3d 556, 565 (1st Cir. 2005).

We review a district court's ruling rejecting the application of the doctrine of equitable tolling for abuse of discretion, always mindful of the "highly deferential" nature of our oversight. <u>Mr. I.</u> v. <u>Me. Sch. Admin. Dist. No. 55</u>, 480 F.3d 1, 23 (1st Cir. 2007) (noting that a district court's decision to award or withhold equitable relief is reviewed for an abuse of that discretion); <u>see</u> <u>also</u> <u>Donovan</u> v. <u>Maine</u>, 276 F.3d 87, 92 (1st Cir.

argument for the applicability of the doctrine of equitable tolling to the present case. <u>See</u> <u>Iverson</u> v. <u>City of Boston</u>, 452 F.3d 94, 102 (1st Cir. 2006) (noting that an appellant waives any legal theory which is not "squarely and timely raised in the trial court").

2002)(citing <u>Delaney</u> v. <u>Matesanz</u>, 264 F.3d 7, 13-14 (1st Cir. 2001)). In the present case, Dr. Abraham attributed his failure to file a timely complaint before the district court to the fact that he never received the EEOC First Dismissal Notice because it was sent to the wrong address. According to Dr. Abraham, he never had any communication with the EEOC since he filed a complaint in the MCAD, which communicated to him that pursuant to a work sharing agreement, the complaint would be forwarded to the EEOC. Further, Dr. Abraham submits that while acting as a <u>pro se</u> litigant he was diligent in communicating with MCAD. Moreover, Dr. Abraham states that he lacked any knowledge of the EEOC's filing requirements. However, Dr. Abraham's allegations do not sway this Court to find that the district court abused its discretion in not applying the doctrine of equitable tolling to the present case.

Dr. Abraham never received the EEOC First Dismissal Notice because before receiving said notice, he moved from Queens, New York to Lynchburg, Virginia and never filed a change of address with the EEOC. Dr. Abraham's lack of diligence in filing a change of address with the EEOC as required by 29 C.F.R. § 1601.7(b) is sufficient to reject his equitable tolling claim.[9] <u>Pearison</u> v.

---

[9] Dr. Abraham incorrectly argues that this court's holding in <u>Mercado</u> v. <u>Ritz-Carlton San Juan Hotel, Spa & Casino</u>, 410 F.3d 41 (1st Cir. 2005), supports his position that the doctrine of equitable tolling is applicable to his Title VII claim. <u>Mercado</u> does not deal with a case where an employee failed to comply with his ninety (90) day filing requirement because of his lack of due diligence. Specifically, <u>Mercado</u> discusses how the doctrine of

<u>Pinkerton's Inc.</u>, 90 Fed. Appx. 811, 813 (6th Cir. 2004); <u>Day</u> v. <u>Lincoln Ins. Agency, Inc.</u>, 1 Fed. Appx. 521, 523-524 (7th Cir. 2001); <u>Nelmida</u> v. <u>Shelly Eurocars, Inc.</u>, 112 F.3d 380, 385 (9th Cir. 1997). Furthermore, the fact that Dr. Abraham originally filed his complaint with the MCAD and had no initial communication with the EEOC does not excuse his failure to provide a change of address to the EEOC because the MCAD Dismissal Notice informed him that his Title VII claim was to be reviewed by the EEOC and informed him of the location of the EEOC office. The MCAD became aware on November 9, 2006 that Dr. Abraham had a change of address when he appealed the MCAD's determination through a request letter. Even though the EEOC First Dismissal Notice was issued thereafter, on November 24, 2006, the MCAD's actions in not forwarding this address to the EEOC cannot serve as an excuse for Dr. Abraham's failure to provide the Virginia address to the EEOC. <u>Ball</u> v. <u>Abbott Advertising, Inc.</u>, 864 F.2d 419, 421 (6th Cir. 1988) (holding that even if a petitioner notifies the state agency of his or her change of address, this

---

equitable tolling applies in cases where the employer may have violated the EEOC posting requirements and the employee had no other actual or constructive knowledge of the complaint procedures. <u>Id.</u> at 46-48. In such cases, this Court generally should weigh five factors in considering whether to allow the application of the equitable toling doctrine: "'(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the [filing] requirement.'" <u>Id.</u> at 48 (citing <u>Kelley</u> v. <u>N.L.R.B.</u>, 79 F.3d 1238, 1248 (1st Cir. 1996)).

does not constitute notice to the EEOC); St. Louis v. Alverno College, 744 F.2d 1314, 1316-1317 (7th Cir. 1984) (noting that the burden of providing the EEOC with changes of address is minimal and, as such, it would be unreasonable to expect the EEOC to pore over its files, and those of state administrative agencies, in an effort to ascertain which of the addresses contained therein is correct).

Finally, Dr. Abraham attempts to excuse his lack of diligence by arguing that he proceeded on a pro se status in dealing with the MCAD. First, Dr. Abraham's allegation that he proceeded in a pro se status is not entirely accurate since he had assistance of counsel well before the ninety (90) day right to sue period had expired.[10] Moreover, being pro se does not excuse a petitioner from complying with the EEOC's change of address requirements. Howard v. Boatmen's Nat'l Bank, No. 99-3416, 2000 U.S. App. LEXIS 24492, at *2-3 (8th Cir. Sept. 29, 2000)(finding

---

[10] On November 24, 2006, the EEOC First Dismissal Notice was issued and on January 11, 2007, Dr. Abraham's counsel appeared on his behalf in an oral argument at the MCAD. Even before this date, on September 8, 2005, Dr. Abraham was being represented by J. Michael Johnson of the Alliance Defense Fund. Although the record does not indicate whether Dr. Abraham received the right to sue letter, assuming that he received it three days after it was issued and excluding Saturdays and Sundays, the ninety (90) day right to sue period commenced on November 30, 2006, the day after receipt. McGill v. United States Express Truck Co., No. 08-1101, 2008 U.S. App. LEXIS 20687, at *2 n.1 (1st Cir. Sept. 3, 2008) (citing Fed. R. Civ. P. 6(a), (d)). Thus, the limitation period expired on February 28, 2007. Accordingly, Dr. Abraham was represented by counsel before the ninety (90) day period expired.

-15-

that the doctrine of equitable tolling did not apply to a petitioner proceeding <u>pro se</u> that had failed to notify the EEOC of her change of address). As such, Dr. Abraham may not benefit from the doctrine of equitable tolling.

## CONCLUSION

For the reasons stated above, we find that the district court did not abuse its discretion in denying Dr. Abraham's futile request to amend the complaint to include a 151B claim. Furthermore, this court holds that the district court's decision denying Dr. Abraham's equitable tolling request was not an abuse of discretion. Dr. Abraham's lack of diligence bars the application of the doctrine of equitable tolling to the case at bar. Accordingly, the district court's judgment is **AFFIRMED.**