NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12598


FREDERIC N. HALSTROM[1]  vs.  MARILYN P. DUBE, administratrix,[2]
& another.[3]



Suffolk.     December 3, 2018. - February 15, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Cypher, & Kafker,
JJ.



Attorney at Law, Contingent fee agreement.  Limitations, Statute
     of.  Practice, Civil, Summary judgment.  Estoppel.  Waiver.




     Civil action commenced in the Superior Court Department on
July 7, 2016.

     The case was heard by Michael D. Ricciuti, J., on a motion
for summary judgment.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Frederic N. Halstrom, pro se.
     Michael J. Grace for the defendants.

---

     [1] As assignee of Halstrom Law Offices, P.C.

     [2] Of the estate of David O. Hicks.

     [3] Michael J. Grace.

CYPHER, J.  This is a contract action by a law firm to collect an outstanding legal fee from a former client.  The plaintiff, Frederic N. Halstrom, as assignee of Halstrom Law Offices, P.C. (HLO), brought this action for legal fees against Michael J. Grace, a former HLO employee, and Marilyn P. Dube, as representative of the estate of David O. Hicks, a former HLO client, for the payment of certain legal fees allegedly owed by Hicks to HLO under a contingent fee agreement.  A Superior Court judge allowed the defendants' motion for summary judgment, concluding that Halstrom's claim for fees was time barred by the statute of limitations applicable to contract actions set forth in G. L. c. 260, § 2.[4]  We affirm.

Background.  We summarize the facts found by the motion judge, supplementing them where necessary with undisputed facts in the record.

In 2007, Hicks retained HLO to serve as counsel in a medical malpractice action in the Superior Court.  The contingent fee agreement between Hicks and HLO regarding that litigation, executed on December 7, 2007, included the following discharge provision:

> "If the client wishes to discharge the Law Firm, the client
> shall, in this event, be liable to the Law Firm for a fee
> at the hourly rate of Three Hundred Fifty Dollars ($350.00)

---

[4] Frederic N. Halstrom timely appealed, and we granted his application for direct appellate review.

per hour, as substantiated by a Notarized Statement of Hours, provided by the Law Firm to the client."

Grace, then an employee of HLO, performed most, if not all, of the legal work on the case, but neither he nor HLO recorded Grace's hours contemporaneously.

HLO terminated Grace on June 25, 2010, while Hicks's medical malpractice case was pending. Hicks, notified of Grace's departure, elected to have Grace continue to represent him in the medical malpractice action. Grace and HLO were notified of Hicks's election in writing on July 1, 2010. On July 2, HLO transferred Hicks's file to Grace at his new firm, Denner Pellegrino, LLP (Pellegrino), and shortly thereafter Hicks entered into a second contingent fee agreement regarding his medical malpractice action with Pellegrino.[5] In August 2013 and July 2015, HLO asked Grace to provide it a statement of the hours he spent on Hicks's medical malpractice action while in HLO's employ; Grace was not cooperative. On August 17, 2015, Halstrom, as assignee of HLO, brought suit against Grace in the Superior Court in an effort to compel Grace's cooperation.[6] In

---

[5] Both contingent fee agreements were executed before Mass. R. Prof. C. 1.5 was revised to require that a client's fee agreement with successor counsel state whether the client or successor counsel is to be responsible for payment of former counsel's fees and expenses, if any such payment is due. See Mass. R. Prof. C. 1.5 (c), as amended, 480 Mass. 1315 (2018).

[6] Therein, Halstrom alleged breach of contract and breach of fiduciary duties, and sought equitable relief in the form of a

his complaint in that action, Halstrom noted that "the statutes of limitations are running on Halstrom's rights" against numerous former clients for legal fees owed in accordance with HLO's contingent fee agreement.

Halstrom commenced the present contract action in the Superior Court on July 7, 2016, seeking "an amount exceeding $30,000.00 for legal services rendered" from Hicks's estate (count I) and stating that because Hicks's attorney's fees for the underlying medical malpractice action are capped by statute, Hicks's estate has a cause of action against Grace "and anyone else who has already received payment for legal fees" in connection with the underlying action (count II).  Thereafter, the defendants moved for summary judgment on the ground that Halstrom commenced the action beyond the six-year statute of limitations applicable to contract actions.  Halstrom opposed the motion, arguing that his 2015 action against Grace tolled the limitations period because the action "made it abundantly clear that it was a lawsuit to begin vindicating HLO's right to attorneys' fees" and "formally served as the commencement of its claim against [Hicks] for attorneys' fees."[7]  Halstrom argued in

_____

court order compelling Grace to submit to a deposition concerning the time he expended on Hicks's medical malpractice case and others.

[7] In his motion papers, Halstrom suggested that the statute of limitations began to run "on the date of the breach of

the alternative that the defendants (1) are estopped from asserting the statute of limitations as a defense because they waited too long to act on the defense, (2) are barred from asserting the defense by the equitable doctrine of laches, or (3) waived the statute of limitations defense.

After a hearing, the judge issued a written decision concluding that HLO's contract claim was in fact time barred and that Halstrom's various equitable arguments lacked merit. On appeal, Halstrom argues that the statute of limitations began to run either on July 6, 2015, when Grace ignored HLO's second request for a statement of hours, or on November 13, 2012, when Hicks, Grace, and Pellegrino settled the underlying medical malpractice action, received the settlement check, and failed to pay HLO its outstanding legal fees.[8] He also restates his tolling, estoppel, waiver, and laches arguments.

---

contract," i.e., the date of HLO's final letter to Grace requesting Grace's cooperation. At the motion hearing Halstrom also argued that, notwithstanding the discharge provision language to the contrary, Hicks did not owe HLO any legal fees until Hicks recovered on his medical malpractice claim.

[8] Halstrom also suggests, in a cursory fashion without citation to supporting legal authority, that "[b]y its terms the contingent fee agreement made presentation of a notarized statement of hours expended a condition precedent to rendering [Hicks] liable for attorney's fees converted to an hourly rate as opposed to the contingent fee basis for the payment of attorney's fees to his attorney." This contention was not presented either to the motion judge or this court in any meaningful way, and as a result, we are not obligated to consider it here. See Carey v. New England Organ Bank, 446

Discussion.  We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law.  Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  See Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P., 479 Mass. 741, 750 (2018).  Viewing the record in the light most favorable to Halstrom, we conclude that the motion judge properly entered judgment in favor of the defendants because Halstrom's action was barred by the statute of limitations applicable to contract actions set forth in G. L. c. 260, § 2 (contract actions shall be commenced "only within six years next after the cause of action accrues").

1.  Statute of limitations.  Ordinarily an attorney's cause of action for legal fees accrues no later than the date his or her services are terminated unless the parties enter into a new, enforceable agreement concerning the payment of outstanding

---

Mass. 270, 285 (2006) (issues not fairly raised or argued before trial court are waived); Care & Protection of Martha, 407 Mass. 319, 330 n.11 (1990), citing Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975) (arguments made in cursory and conclusory fashion without citation to supporting legal authority do not rise to level of appellate argument and need not be considered).  Nonetheless, we note that "emphatic words" are generally considered necessary to create a condition precedent that will limit or forfeit rights under an agreement and no such words appear here.  See Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 46 (1991); Thomas v. Massachusetts Bay Transp. Auth., 39 Mass. App. Ct. 537, 543 (1995).

fees. Jenney v. Airtek Corp., 402 Mass. 152, 154 (1988), citing Eliot v. Lawton, 7 Allen 274, 276 (1863) (statute of limitations starts to run for attorney's services in handling case when action is terminated). See Taft v. Shaw, 159 Mass. 592, 593 (1893) (statute of limitations for past services triggered by conclusion of attorney's employment); Powers v. Manning, 154 Mass. 370, 377 (1891) (statute of limitations commences to run on attorney's claim for past services at time of discharge).

The plain language of HLO's fee agreement compels the same result. The pertinent discharge provision unmistakably provides that if the client discharges HLO, then the client will be liable to HLO for work performed by HLO at a prescribed rate. Therefore, whether we apply the usual rule restated in Jenney, 402 Mass. at 154, or confine our analysis to the plain language of HLO's fee agreement makes no meaningful difference -- HLO's cause of action against Hicks for legal services accrued no later than July 1, 2010, the date that HLO was notified that Hicks had elected to terminate HLO's services.

We are not persuaded by Halstrom's argument that the statute of limitations began to run either on July 6, 2015, when Grace ignored HLO's final request for a statement of hours, or on November 13, 2012, when Hicks, Grace, and Pellegrino settled the underlying medical malpractice action, received the

settlement check, and failed to pay HLO its outstanding legal fees.

As to the first argument, Grace's refusal to cooperate with HLO has no bearing on when HLO's cause of action for legal fees against Hicks accrued.  Grace was not a party to HLO's contingent fee agreement with Hicks, and despite Halstrom's protestations to the contrary, Grace's cooperation was not required for Halstrom to initiate an action against Hicks within the applicable statute of limitations.  As the motion judge pointed out, Mass. R. Civ. P. 11 (a), as amended, 456 Mass. 1401 (2010), does not require that Halstrom have an exact damages figure before filing suit to recover on the fee agreement, only that "to the best of his knowledge, information, and belief there is a good ground" to support the suit.

As to the second argument, the fact that a contingency contemplated in HLO's fee agreement with Hicks -- settlement -- eventually came to pass also has no bearing on when HLO's cause of action for legal fees against Hicks accrued, because Hicks's discharge of HLO terminated HLO's right to recover on the contingent fee agreement.  See Malonis v. Harrington, 442 Mass. 692, 696-697 (2004) (discharge terminated attorney's right to recover on contingent fee contract); Hug v. Gargano & Assocs., P.C., 76 Mass. App. Ct. 520, 525 (2010) (termination of attorney's engagement ends attorney's right to recover on

contingent fee agreement). Indeed, "[t]he general rule in Massachusetts is that, on discharge, an attorney has no right to recover on the contingent fee contract, but thereafter, the attorney may recover the reasonable value of his services on a theory of quantum meruit." Malonis, supra at 701, and cases cited. HLO sought to avoid that result here by including a discharge provision in its fee agreement that purported to establish the value of HLO's services, but that provision as written does not affect our statute of limitations analysis. If HLO had conditioned its entitlement to fees on Hicks's recovery in the underlying medical malpractice suit, then Halstrom's argument that the statute of limitations began to run when Hicks received his settlement check might be persuasive; but HLO did not do that. It is to the terms of that provision that HLO is now bound.

In short, in accordance G. L. c. 260, § 2, Halstrom had until July 1, 2016, to bring his contract action against Hicks. That Halstrom missed the deadline "by a few days" is inconsequential -- his claim is time barred nevertheless.

2. Halstrom's equitable arguments. Halstrom's remaining arguments do not require lengthy comment. Halstrom's contention that his August 2015 action against Grace "in pursuit of [attorney's] fees" tolled the six-year limitations period on his contract action against Hicks is patently devoid of merit.

Equitable tolling is to be "used sparingly," and the circumstances where tolling is available are exceedingly limited.  Shafnacker v. Raymond James & Assocs., Inc., 425 Mass. 724, 725-726, 728-729 (1997) (statute of limitations on investor's negligence and breach of fiduciary duty claims against brokers was not equitably tolled by investor's filing of arbitration claim; proper procedure would have been for investor to file complaint within limitations period and have action stayed pending result of arbitration), citing Andrews v. Arkwright Mut. Ins. Co., 423 Mass. 1021, 1022 (1996) (available for excusable ignorance or where defendant affirmatively misled plaintiff), and Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990) (available where plaintiff "has actively pursued his judicial remedies by filing a defective pleading during the statutory period").  Halstrom's 2015 suit against Grace, which essentially sought Grace's cooperation with HLO's requests for statements of the hours he spent on certain cases while in HLO's employ, does not fit within any of the standard exceptions that permit equitable tolling.  There is no evidence that Halstrom was ignorant of the applicable statute of limitations or the facts giving rise to the limitation period's commencement; in fact, his filings in the 2015 lawsuit support the contrary conclusion.  In addition, there is no evidence that either of the defendants misled Halstrom or otherwise lulled

Halstrom into delaying action on his claim for fees.  See

Adamczyk v. Augat, Inc., 52 Mass. App. Ct. 717, 724 (2001)

(statute of limitations not equitably tolled where defendant

made no affirmatively misleading statements to lull plaintiffs

into not asserting claims).

Halstrom also argues that the defendants should be estopped

from asserting the statute of limitations defense because they

"knew, or at least believed, all along" that the applicable

statute of limitations would run out on or before July 1, 2016,

and still they "let more than two years of intense litigation go

by utterly unnecessarily."  He argues in the alternative that

the defendants possibly waived the statute of limitations

defense by failing to assert it before moving for summary

judgment and that the motion judge could not have concluded that

they had not waived the defense as a matter of law because the

record was not developed on that point.

Neither argument is persuasive.  Halstrom does not contest

that the defendants timely asserted the statute of limitations

as an affirmative defense in their answer.  Cf. Merrimack

College v. KPMG LLP, 480 Mass. 614, 632 (2018) (omission of

affirmative defense from answer generally constitutes waiver of

that defense); Sharon v. Newton, 437 Mass. 99, 102 (2002)

(same).  Rather, Halstrom argues that the defendants should have

acted on the defense in the form of a motion to dismiss before

moving for summary judgment. Halstrom's position is without merit. Our rules of civil procedure "do not compel parties to assert pleaded defenses in pretrial motions within an arbitrary time period." Trinity Church in the City of Boston v. John Hancock Mut. Life Ins. Co., 399 Mass. 43, 56 (1987) (failure of defendants to act on statute of limitations defense until immediately prior to trial was not waiver of defense and did not estop defendants from raising that defense where it was clearly stated in answers from onset of litigation). Certainly, "[f]or any number of legitimate reasons a party might wait until well into the litigation, or until trial, to file a motion based on a duly-pleaded defense -- including the desire to obtain discovery, the knowledge that a defense will depend on a triable issue of fact, or simple considerations of strategy." Id. We echo the motion judge in concluding that neither estoppel nor waiver is supported by this record.[9]

---

[9] Halstrom also posits, with little explanation, that the equitable doctrine of laches should preclude the defendants from asserting a statute of limitations defense. We agree with the motion judge that it does not, because Halstrom has failed to show how the defendants' delay in asserting the statute of limitations defense has disadvantaged Halstrom in mounting his opposition to the defense. See, e.g., A.W. Chesterton Co. v. Massachusetts Insurers Insolvency Fund, 445 Mass. 502, 517 (2005) (laches inapplicable where party invoking doctrine failed to demonstrate that any delay in asserting claim was unjustified or unreasonable and that it had prejudicial effect on party's ability to defend against claim).

Conclusion.  We agree with the motion judge that Halstrom's claim for fees was time barred by the statute of limitations applicable to contract actions set forth in G. L. c. 260, § 2. The judgment of the Superior Court is affirmed.

So ordered.