# United States Court of Appeals
## For the First Circuit

No. 05-1839

ANTONIO ADORNO, ET AL.,

Plaintiffs, Appellants,

v.

CROWLEY TOWING AND TRANSPORTATION CO. and SEAFARERS
INTERNATIONAL UNION OF NORTH AMERICA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lynch, Circuit Judge,

Campbell, Senior Circuit Judge,

and Howard, Circuit Judge.

J.H. Zidell, with whom J.H. Zidell, P.A. was on brief, for appellants.
Raquel M. Dulzaides, with whom Mayra M. González Reyes and Jimenez Graffam & Lausell were on brief, for appellee Crowley Towing and Transportation Company.
Ellen Silver, with whom Mary T. Sullivan, and Segal, Roitman & Coleman were on brief, for appellee Seafarers International Union of North America.

April 4, 2006

**HOWARD, Circuit Judge**.  Plaintiffs are former employees of Crowley Towing and Transportation Company ("Crowley") who brought a "hybrid" Section 301/unfair representation action under the Labor Management Relations Act, 29 U.S.C. § 185, against defendants Crowley and Seafarers International Union of North America ("Union").[1]  Plaintiffs claimed that the layoff methodology negotiated for the shutdown of Crowley's Puerto Rico operation violated the seniority provisions of their collective bargaining agreement (CBA).  On appeal, plaintiffs challenge the district court's denials of their motions to amend their complaint and for additional discovery to respond to defendants' successful motions for summary judgment.[2]

Crowley notified the Union in December 1996 of its intention to close permanently its operations in Puerto Rico.  The Union and Crowley met to negotiate various aspects of the shutdown, including which employees would be retained for residual work after the shutdown and various benefits issues.  Some employees,

---

[1] Although the notice of appeal was apparently filed on behalf of all plaintiffs who brought this action, four of the eight settled their cases and dismissed their claims and are therefore not parties to this appeal.

[2] Plaintiffs also make passing suggestions that the court erred in granting defendants' summary judgment motions but have failed to develop any such argument sufficiently to put the correctness of the summary judgment rulings in dispute (other than as premised on the denials of the motions to amend and for additional discovery).  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-2-

including a number of the plaintiffs, attended the negotiation sessions.

On March 1, 1997, Crowley shut down most of its operations and laid off most of its employees. On March 6, 1997, a letter agreement between Crowley and the Union was posted in the union hall. The agreement listed all the employees laid off as of March 1, and also those employees who would be temporarily retained to complete Crowley's residual contractual obligations. The immediately terminated employees received their last paychecks on March 7, 1997. On April 17, 1997, the parties reached a second agreement, known as "the stipulation," which addressed the "effects" of the shutdown by resolving outstanding benefits issues.

The present case was initiated by six plaintiffs, who filed a putative class action in the Southern District of Florida on August 27, 1997, claiming that Crowley and the Union had violated the CBA's seniority provisions in selecting the employees who would be retained after the shutdown. The case was transferred to the District of Puerto Rico and consolidated with a related case brought in that court by two of the six Florida plaintiffs. Procedural tangles, discovery disputes, and delays followed. For our purposes, only the following are of consequence.

The district court denied plaintiffs' motion to certify a class action on December 29, 1998. On January 28, 1999, one day before the court's deadline for dispositive motions, plaintiffs

filed a motion to amend their complaint to add 96 additional plaintiffs. The following day both Crowley and the Union filed motions for summary judgment. Thereafter, Crowley and the Union filed oppositions to the motion to amend, arguing that amendment was futile because the new plaintiffs' claims were untimely and filed in bad faith.

At a discovery conference in May 1999, the court ordered the parties to brief their positions on the timeliness of the proposed amended complaint and directed defendants to answer outstanding interrogatories by June 4, 1999. The court also stated it would "take under advisement whether the motion for summary [judgment] filed by defendants should be stayed until discovery was completed." The parties duly filed their briefs on the timeliness issue. Both sides included evidentiary material in their filings, much of which duplicated the summary judgment materials.

On June 21, 2000, plaintiffs filed a motion to compel the depositions of the two affiants who figured prominently in the defendants' motions for summary judgment. See Fed. R. Civ. P. 56(f). On December 11, 2000, the district court denied the motion to amend as to 94 of the 96 new plaintiffs, concluding that their claims were time-barred. The district court did, however, permit the addition of two other plaintiffs whose claims were not time-barred because they had filed grievances with the Union about the

lay-off, thus tolling the statute of limitations. This brought the total number of plaintiffs to eight.

The case languished for over three years and was then transferred to a different district judge. On June 28, 2004, the new judge denied the motion for additional discovery as untimely and unsupported by the affidavit required by Fed. R. Civ. P. 56(f). Plaintiffs then filed their response to the pending motions for summary judgment. On September 30, 2004, the district court granted partial summary judgment to the Union and Crowley, dismissing four of the plaintiffs on the ground that their seniority rights were not violated in the shutdown. The court denied summary judgment with respect to the other four plaintiffs; those remaining plaintiffs eventually settled their claims.

The 94 prospective plaintiffs ("the prospective plaintiffs") whose claims the district court found to have been time-barred appeal from the court's December 11, 2000 order denying the motion to amend. The four plaintiffs ("the dismissed plaintiffs") whose claims were dismissed appeal the court's September 30, 2004 order partially granting summary judgment in favor of the defendants. As to this issue, they do not attack the merits of the summary judgment decision, but rather argue that the court should have allowed them to conduct additional discovery before issuing a summary judgment ruling.

We start with the prospective plaintiffs' challenge to the denial of their motion to amend. This issue turns on whether the prospective plaintiffs had timely claims (putting aside the tolling that occurred while the class action issue was pending). This question, in turn, turns on when the cause of action accrued. The district court found, considering the evidence, that the accrual date was in early March of 1997. The court held that the motion to amend would be futile for 94 of the 96 prospective plaintiffs, since their claims were time-barred.

On appeal, the prospective plaintiffs argue that the accrual date was later than that found by the district court. Pointing out that motions to amend are to be "freely granted," the prospective plaintiffs contend that their motion should have been assessed under the liberal Fed. R. Civ. P. 12(b)(6) standard based entirely on the "four corners" of the tendered complaint, and that the district court erred in considering outside evidentiary materials without notice that it was going to do so. Building on this position, the prospective plaintiffs further contend that the court was bound by their allegation that the layoffs did not take place until April 1, 1997. Alternatively, the prospective plaintiffs posit that they did not know of their injury until they learned that defendants had actually violated the CBA's seniority provisions, and the evidence suggests that did not occur until the prospective plaintiffs eventually received a copy of the operative

-6-

CBA in July 1997, or, at the earliest, the date of the stipulation (April 17, 1997).

We review denials of motions to amend pleadings for abuse of discretion. See Interstate Litho Corp. v. Brown, 255 F.3d 19, 25 (1st Cir. 2001); see also Charles Bank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 158 (1st Cir. 2004)("An error of law is, of course, always an abuse of discretion."). Consent to file amended pleadings "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), unless the amendment would be futile or reward undue delay, see Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004); Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994). In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6). See Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). The bar for a plaintiff tendering an amended complaint is higher after a motion for summary judgment has been filed, as the plaintiff must demonstrate "that the proposed amendments were supported by substantial and convincing evidence." Gold, 30 F.3d at 253 (citation and internal quotation marks omitted); see also Girl Scouts, 383 F.3d at 12.[3]

---

[3] The prospective plaintiffs' motion to amend was actually filed one day before the defendants' motions for summary judgment, which were filed on the deadline for dispositive motions established by the court. However, all the motions were entered on the electronic docket the same day, and the district court considered them together. At bottom, the motion to amend was tendered at the "eleventh hour to fend off summary judgment," and a court "need not

-7-

We begin on common ground. Both sides agree that a six-month statute of limitations applies to "hybrid" actions, and that the clock started ticking when the prospective plaintiffs knew, or reasonably should have known, of the alleged wrongful acts. See Arriaga-Zayas v. Int'l Ladies' Garment Workers' Union, 835 F.2d 11, 13 (1st Cir. 1987). The parties also agree, and we accept arguendo, that the running of the statute was tolled during the pendency of the motion for class certification. See generally Basch v. Ground Round, Inc., 139 F.3d 6, 10 (1st Cir. 1998). Because the prospective plaintiffs did not move to amend the complaint until January 28, 1999, 30 days after the denial of class certification, the action is only timely if the case accrued fewer than five months before the filing of the original class action complaint on August 27, 1997. The prospective plaintiffs assert that the accrual date was no earlier than April 1, 1997, rendering the action timely.

---

tiptoe through empty formalities to reach foreordained results." Gold, 30 F.3d at 254 (citation and internal quotation marks omitted). Also, and in any event, the district court did not err in assessing the motion under the summary judgment standard. The prospective plaintiffs were on notice of the possible conversion when defendants presented evidentiary materials with their briefs, and the prospective plaintiffs effectively invited the conversion when they responded in kind, and without objection to defendants' submissions. See, e.g., Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38-39 (1st Cir. 2004); Boateng v. Interamerican University, Inc., 210 F.3d 56, 60-61 (1st Cir. 2000); Collier v. City of Chicopee, 158 F.3d 601, 602-604 (1st Cir. 1998).

The district court correctly concluded that the action accrued in early March of 1997. The prospective plaintiffs knew, or had reason to know, of the claimed wrong no later than March 7, 1997, when they received their final paychecks and had the opportunity to review the letter agreement detailing which workers were released and which were retained. The prospective plaintiffs obviously knew that they had been terminated, each knew his or her individual seniority status, and would have realized that less-senior employees were retained upon reviewing the letter agreement. Therefore, the putative amended complaint would have been untimely.

The prospective plaintiffs' contrary arguments are unpersuasive. With respect to the operative seniority provision in the CBA that the prospective plaintiffs allege they did not actually receive until four months after the lay-offs, the prospective plaintiffs have not contested defendants' assertions that the provision had been the same for many years and that the workers were aware of it. The April 17 stipulation is similarly unhelpful to the prospective plaintiffs, as it deals with the "effects" of the closing and specifically acknowledges that most of the workforce was laid off on March 1, 1997. At bottom, the April 1, 1997 layoff date alleged in the complaint is a bare allegation with no evidentiary support.[4] See Nat'l Amusements, Inc. v. Town

_____

[4] Indeed, the prospective plaintiffs' actual allegation, as quoted in their brief, states that the discharges took place from "on or about February 28th, 1997 to April 1st, 1997." This allegation

<u>of Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995)("[W]e need not credit purely conclusory allegations, indulge rank speculation, or draw improbable inferences.").

We turn now to the dismissed plaintiffs' argument that the district court erred in denying their motion for additional discovery. The dismissed plaintiffs complain that they were misled by the court's statement that it would take "under advisement" the question of whether defendants' motions for summary judgment should be stayed until discovery was completed. The dismissed plaintiffs also assert that no formal affidavit was required because they substantially complied with Fed. R. Civ. P. 56(f), and that Rule 56(f) only fully comes into play when an adequate time for discovery has passed. Central to the dismissed plaintiffs' argument on this point is their fundamental assertion that deposing the defendants' affiants was essential to determine the zealousness of the Union's bargaining tactics.

We review a district court's denial of a Fed. R. Civ. P. 56(f) motion for abuse of discretion. <u>See</u> <u>Resolution Trust Corp. v. North Bridge Assocs., Inc.</u>, 22 F.3d 1198, 1203 (1st Cir. 1994). While we do not require slavish adherence to Rule 56(f)'s formal requirements, when additional discovery is sought, such a motion must (1) be presented in a timely manner; (2) show good cause for

---

itself implies that some, if not most, of the new claims would be untimely.

the failure to discover the necessary facts sooner; (3) set forth a plausible basis for believing that the necessary facts probably exist and can be learned in a reasonable time; and (4) establish that the sought facts, if found, will "influence the outcome of the pending motion for summary judgment." Id.; see also Velez v. Awning Windows, Inc., 375 F.3d 35, 39-40 (1st Cir. 2004) (functionally equivalent statement may substitute for the affidavit required by Rule 56(f)).

There is a fatal disconnect between the dismissed plaintiffs' arguments and the district court's summary judgment decision. The district court granted summary judgment in favor of defendants on the ground that the dismissed plaintiffs' seniority rights were not violated in the shutdown. The dismissed plaintiffs' contentions thus fail to address, let alone cast doubt upon, the court's rationale on the dispositive issue, see In re Miles, 436 F.3d 291, 294 (1st Cir. 2006), and disregard Rule 56(f)'s requirement that the requested discovery be capable of influencing the outcome of the motion for summary judgment, see Velez, 375 F.3d at 40; Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 4 (1st Cir. 2004)(the sought "facts, if obtained, would help defeat pending motion").

Moreover, the dismissed plaintiffs failed to file their motion for additional discovery until fifteen months after the motions for summary judgment were filed. This was far too long a

delay.  See Guzman-Ruiz v. Hernandez-Colon, 406 F.3d 31, 35 (1st Cir. 2005) (three-month delay excessive); Vargas-Ruiz, 368 F.3d at 4 (Rule 56(f) motion should be filed "promptly upon service of defendant's dispositive motion").  That the district court took "under advisement" the request to stay the summary judgment motions until completion of the then-outstanding discovery -- interrogatories that defendants were directed to answer by June 4, 1999 -- cannot reasonably be interpreted to give the dismissed plaintiffs carte blanche to ignore pending dispositive motions and discovery deadlines and then propound new discovery requests over a year later.

It is regrettable that this case languished for years in the district court.  But in the end, the judge to whom the case was later assigned acted within her discretion in denying the motions to amend the complaint and for additional discovery.  Accordingly, we **affirm** the judgments entered on behalf of the defendants in this matter.

So ordered.