UNITED STATES of America ex rel. Kerry DEERING, Plaintiff,

v.

PHYSIOTHERAPY ASSOCIATES, INC., Stryker Corporation, and John Does 1–8, Defendants.

Civil Action No. 03cv10626–NG.

United States District Court, D. Massachusetts.

March 10, 2009.

---

Robert A. Griffith, Gargiulo, Rudnick & Gargiulo, Boston, MA, Jennifer A. Serafyn, United States Attorney's Office, Boston, MA, for Plaintiff.

Jonathan L. Diesenhaus, Hogan & Hartson, Washington, DC, Bruce A. Levy, Gibbons P.C., Newark, NJ, Joshua S. Levy, Ropes & Gray LLP, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER RE: MOTIONS TO DISMISS AND AMEND

NANCY GERTNER, District Judge.

## I. INTRODUCTION

Relator Kerry Deering brought suit against his employer and its parent corporation under the False Claims Act, alleging Medicare and Medicaid fraud. Over four years later, but before the case was unsealed, he amended his complaint to add claims for retaliation and defamation. Shortly thereafter, the government and the defendants reached a settlement and voluntarily dismissed the fraud claim. The defendants have moved to dismiss relator's remaining claims as time-barred, inadequately pled, and without a basis for sub-

ject matter jurisdiction. The relator has moved to amend his complaint once more, adding allegations to cure any potential pleading defects. Because I find that the remaining allegations are either time-barred or insufficient to state a claim, I **GRANT** the motion to dismiss (document # 43) and **DENY** the motion to amend (document # 75).

## II. *FACTS*

Kerry Deering and his wife Kim owned and operated a physical therapy practice in Kingman, Arizona ("Kingman Clinic"). In January 2001, they sold their practice to Physiotherapy Associates, Inc. ("PA"), which provides physical, occupational, and speech therapy services at approximately 475 locations in 31 states, including Massachusetts. Upon executing the sale, Deering and his wife both entered into three-year employment contracts with PA, agreeing to continue working at Kingman Clinic for $70,000 per year plus benefits. The employment contracts both included noncompete and nonsolicitation clauses barring the Deerings from offering physical therapy services in Mohave County, Arizona, for two years after separation from PA.

Deering alleges that the new management instructed clinic staff to engage in several illegal billing practices, including billing for at least three services per patient regardless of the services actually rendered. He claims that PA submitted false invoices to Medicare and Medicaid from at least January 2001 to November 2002. Deering states that he protested the billing practices to PA's national/regional billing manager, Laurie Kozlowski, its regional manager, Stephen Tobler, and Kingman Clinic's office manager, Lisa

Mueller, in 2001 and 2002. He also claims that he advised clinic staff not to follow PA's billing instructions. According to Deering, PA moderated its overbilling in the fall of 2002, upon learning of a government action concerning another health care provider. Thereafter, PA advised employees to claim two therapy services for every patient seen.

At some point in November 2002, PA conducted an internal investigation of Deering, purportedly for irregularities in Medicare billing. On November 18, 2002, PA fired Deering with one year, one month, and fifteen days remaining on his contract. On February 3, 2003, PA fired Deering's wife Kim with ten months and twenty-eight days remaining on her contract. Constrained by their noncompete agreements, the Deerings moved to Texas to start a new physical therapy practice. Having been largely unsuccessful, they returned to Kingman to restart their practice after the noncompete period expired. This attempt also failed, and the Deerings had to liquidate many of their assets to support themselves. Deering claims that his business difficulties resulted in no small measure from certain PA employees' campaign to smear him. He asserts that these defendants told people in the Kingman community, including referring physicians, that he was being investigated for, or had been convicted of, healthcare fraud and that he and his wife had divorced as a result.

On April 4, 2003, Deering filed a qui tam action against PA and its parent company Stryker Corporation ("Stryker")[1] for violation of the False Claims Act (FCA), 31 U.S.C. § 3729 et seq. (document # 1). Pursuant to that Act, the complaint was

---

1. Deering indicates in his complaint that Stryker sold PA to Walter Street Healthcare Partners in June 2007, but that "under the terms of the sale agreement, Stryker will re-

tain responsibility for any damages to be paid as a result of this action." First Am. Compl. ¶ 19 (document # 31).

sealed for sixty days, and the federal government secured several extensions of the seal. In September 2006, the government disclosed the complaint (although it remained sealed) to the defendants, and the parties reached a settlement in principle on December 14, 2006. On July 30, 2007, Deering amended his complaint to add a defamation claim under Arizona Law and a retaliation and discrimination claim under the False Claims Act, 31 U.S.C. § 3730(h) (document # 31). He alleges that PA fired him and his wife because they had complained about illegal billing practices and that PA employees and certain unidentified defendants defamed him to intimidate him and render him a less credible witness.

On July 31, 2007, the government and the defendants entered a stipulation of voluntary partial dismissal (document # 33) following the defendants' agreement to settle the FCA claim for $16.6 million, and I unsealed the case on September 11, 2007. On March 14, 2008, the defendants moved to dismiss Deering's remaining retaliation and defamation claims based on the applicable statutes of limitations, inadequate pleading, and lack of supplementary jurisdiction (document # 43). On July 30, 2008, Deering moved to amend his complaint a second time, adding more specific allegations as to both counts (document # 75).

## III. DISCUSSION

### A. Motions Considered Together

As they turn on the same legal issues, I will address the motion to dismiss and the motion to amend together. Under Fed. R.Civ.P. 15(a), a plaintiff may amend the complaint after being served with a responsive pleading "only with the opposing party's written consent or the court's leave." Courts liberally grant motions to amend "unless the amendment would be futile or reward undue delay." *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir.2006). To assess futility, a court applies the motion to dismiss standard under Fed.R.Civ.P. 12(b)(6). *Id.* Accordingly, the merits of both the motion to dismiss and the motion to amend depend on whether the plaintiff's retaliation and defamation allegations "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

The defendants move to dismiss Deering's retaliation and defamation claims for untimeliness and inadequate pleading. They further argue that supplementary jurisdiction over the defamation claim is inappropriate under 28 U.S.C. § 1367.

### B. Timeliness

■ Deering's FCA retaliation claim[2] and defamation claim are governed by different limitations periods. The Supreme Court has held that retaliation claims brought pursuant to 31 U.S.C. § 3730(h) are governed not by the six-year statute of limitations spelled out in the FCA at § 3731(b), but rather by "the most closely analogous state limitations period." *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 411, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005). As the Court noted in a footnote, *see id.* at 419 n. 3, 125 S.Ct. 2444, the closest analogue in Arizona is the wrongful

---

**2.** The first amended complaint contains allegations concerning Deering's wife: "Kim Deering was fired on February 3, 2003 for complaining about the inappropriate billing of physical therapy services rendered by an athletic trainer to Medicare." First Am. Compl. ¶ 51. But as the defendants point out, Mrs. Deering is not a party to this action, and Mr. Deering has no standing to bring a claim for PA's alleged retaliation against her. Even if she had been a party to the suit, her claim would be time-barred under the analysis presented below.

termination statute, which provides a limit of one year. Ariz.Rev.Stat. Ann. § 12–541(4). The closest analogue in Massachusetts is either the state's personal injury catchall, which provides a limit of three years, Mass. Gen. Laws ch. 260, § 2A, or the state's whistleblower statute, which provides a limit of two years, *id.* at ch. 149, § 185. However, given the facts of the case, the choice-of-law issue is immaterial: PA terminated Deering on November 18, 2002, and he did not assert a claim under § 3730(h) until he filed his first amended complaint on July 30, 2007—almost five years later.[3]

Deering's defamation claim, meanwhile, carries a one-year statute of limitations. *See* Ariz.Rev.Stat. Ann. § 12–541(1). In his first amended complaint, Deering alleged that unidentified persons "began a campaign to smear" his name, spreading rumors that he had engaged in medicare fraud, that he had been investigated and/or punished for it, and that his marriage had fallen apart as a result. First Am. Compl. ¶¶ 59–60, 73 (document # 31). Deering claimed that these comments were made "during the time period surrounding the Deering's [sic] termination and continuing through the present time." *Id.* ¶ 59. Ari-

zona courts have required defamation plaintiffs to plead their claims with more specificity than this, identifying "what was said or written, by whom, [and] when." *Athans v. Starbucks Coffee Co.*, No. 06–1841, 2007 WL 899130, at *2 (D.Ariz. Mar. 23, 2007). The "when" is particularly important: if the general representation that defamatory comments "continued through the present time" were enough to state a claim, the statute of limitations would be toothless.

Deering attempts to remedy this shortcoming in his proposed second amended complaint. In that complaint, he identifies a number of specific statements that might support a defamation claim. All statements to which he has attached a date were made more than a year before he asserted his defamation claim, with two exceptions. First, a rumor heard by Kingman's mayor at a local golf club in the spring or summer of 2007 that Deering had gotten into trouble with Medicare over billing, and second, that a former PA employee told a patient on November 27, 2007, that Deering had left town "because he was ashamed of wrongfully billing Medicare," Prop. Second Am. Compl. ¶ 81 (document # 77).[4]

---

**3.** For all three statutes that might apply, the limitations period runs from the date Deering was terminated. *See Haggerty v. Am. Airlines, Inc.*, 102 Fed.Appx. 623, 624 (9th Cir.2004) (cause of action under § 12–541 accrues upon discharge); *Riley v. Presnell*, 409 Mass. 239, 243, 565 N.E.2d 780 (1991) (tort claim accrues when the plaintiff is injured); Mass. Gen. Laws ch. 149, § 185(b) (defining discharge as retaliation actionable under the statute).

**4.** These statements include: (1) in November 2002, the week before Deering was fired, PA lawyer Martha Bennett pretended to be a Medicare attorney and told a PA employee that Deering was going to be walked out of the office in handcuffs; (2) on November 18, 2002, the day Deering was fired, Lisa Mueller, the administrator of Kingman Clinic, told at

least four members of the occupational therapy staff that Deering had committed Medicare fraud; (3) from November to December of 2002, Stephen Tobler and Michael Rich, an athletic trainer, said Deering "had not done the right thing and that was why he was fired"; (4) after Deering had left Kingman, someone told patient Gene Suggs that Deering had been handcuffed and escorted out of PA's offices; (5) in 2002 or 2003, a woman named Sheila Sparling left a message on Kelly Suggs's answering machine stating that Deering had committed billing fraud; and (6) from January through March of 2005, PA employee Dustin Brisco and certain female employees told patient Jim Cage that Deering had engaged in fraudulent billing, did not tell the truth, and was going to lose his license and be charged. *See* Prop. Second Am. Compl. ¶ 81 (document # 77).

Based on a straightforward application of the statutes of limitations, Deering's retaliation claim and much of his defamation claim appear to be foreclosed. But Deering has two further arguments for avoiding dismissal: First, that the statutes of limitations were tolled by the sealing of the complaint under the FCA, and second, that even if they were not, the claims relate back to the original complaint. I turn now to these arguments.

### 1. Tolling

■ Deering argues that the applicable statutes of limitations were in fact tolled while the action was "stayed" from April 4, 2003, the date the complaint was filed, to September 11, 2007, the date the case was unsealed. When a private party—a "relator"—brings suit on behalf of the government under the FCA, the Act requires that he file the complaint in camera and that the suit remain under seal for sixty days. 31 U.S.C. § 3730(b)(2). The government may receive extensions of the seal upon showing good cause. § 3730(b)(3). Deering argues that this seal rendered him "unable, due to no fault of his own, to ferret out any further evidence through discovery" to develop his retaliation and defamation claims. Pl.'s Opp'n 11, 17–18 (document # 59). At the same time, he notes, the Act "forces relators to race the government to the courthouse" if they hope to earn a percentage of any settlement or judgment, such that Deering felt obliged to file suit before fully developing his additional claims. *See id.* at 9 n. 4. He asks that I resolve his conundrum by tolling the statute of limitations.

Deering's argument must fail for two reasons. First, he can identify no case law supporting the idea that the sealing of an FCA complaint tolls the statute of limitations on other claims a relator might later raise. To be sure, Deering cites a string

of cases, but all are inapposite. He relies heavily on *United States ex rel. Parikh v. Premera Blue Cross*, No. 01–0476, 2007 WL 1031724 (W.D.Wash. Apr. 3, 2007), for the statement that "[i]t would be unfair to penalize relators by barring their claims on timeliness grounds when they cannot control a court's decision to permit multiple extensions of the seal." *Id.* at *3. The relator in that case worked as an auditor for a Medicare fiscal intermediary, which was charged with auditing the disbursement of funds to providers. The relator claimed that his employer had knowingly or recklessly failed to perform its auditing obligations. He filed the original FCA claim on March 29, 2001, the government obtained several extensions of the seal, and the relator amended his complaint on May 9, 2005. After the seal was lifted, the court held that the claims raised in the amended complaint were not barred by the statute of limitations, which appeared to have run by that point, because the statute was tolled when the original complaint was filed.[5] However, "tolling" meant something different in *Parikh* from what Deering argues here. In *Parikh*, the court noted that the claims in the first complaint and the amended complaint were "almost identical," thus, the only question was whether a claim is "brought" when the relator files the original complaint or when the complaint is unsealed. It held that the statute is tolled—meaning that the claim was timely filed—when the complaint was first brought. This result does not forgive a delay in raising claims *unrelated* to the those asserted in a timely original complaint.

The other cases Deering cites are likewise off point. Three of them stand for the same proposition as *Parikh*: that an FCA suit commences for limitations purposes when a relator first files suit, not

---

5. The court did not specify what claims were raised in the amended complaint.

when the complaint is unsealed. *See United States ex rel. Downy v. Corning, Inc.,* 118 F.Supp.2d 1160 (D.N.M.2000) (qui tam suit alleging employer billed Medicaid and Medicare for unnecessary blood tests); *United States ex rel. Costa v. Baker & Taylor, Inc.,* No. 95–1825, 1998 WL 230979 (N.D.Cal. Mar. 20, 1998) (FCA claim against book wholesaler for overcharging public libraries); *In re Cardiac Devices Qui Tam Litig.,* 221 F.R.D. 318 (D.Conn. 2004) (suit alleging that hospitals violated the FCA by billing Medicare for services provided in clinical trials for cardiac devices that had not been approved by the Food and Drug Administration). Relatedly, *United States ex rel. Campbell v. Lockheed Martin Corp.,* 282 F.Supp.2d 1324 (M.D.Fla.2003), involved the concept of relation back, *see infra,* not statutory tolling. The relator claimed that a defense contractor double-billed the government and submitted false invoices. The government intervened and filed a complaint outside of the applicable statute of limitations, but the court ruled it timely because it related back to the relator's original complaint. The final case cited, *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702 (10th Cir.2006), lies even further afield. The court there held that the statute of limitations and tolling provision at 31 U.S.C. § 3731(b)(2) applies only to the federal government, not to relators.

Second, Deering's argument that the seal prevented him from developing his claims is contradicted by the fact that many relators have filed amended complaints under seal. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.,* No. 01–12257, 2007 WL 4287572 (D.Mass. Dec. 6, 2007) (relator amended complaint three times under seal, adding allegations and defendants); *United States ex rel. Poteet v. Medtronic, Inc.,* 552 F.3d 503 (6th Cir. 2009) (relator amended her complaint three times under seal to add defendants); *United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc.,* Nos. 00–39–M, 99–170–M, 2004 WL 2403114, at *3 (W.D.Ky. Sept. 30, 2004) (relator amended complaint twice under seal to add new claims, including a retaliation count). Even the relator in Deering's model, *Parikh,* amended his complaint before the seal was lifted. *See* 2007 WL 1031724, at *1. Indeed, Deering filed his own first amended complaint a month before the seal was lifted. That he was able to do so suggests that any necessary investigation simply took him time—or that he delayed without cause—not that such investigation was impossible under the circumstances.[6]

Thus, no case law supports Deering's claim that the FCA's sealing provision tolls the statute of limitations for new claims, unrelated to the original one and obviously known to the relator from the outset. Nor has Deering established that the seal creates "exceptional circumstances" beyond his control that precluded a timely finding. *Abraham v. Woods Hole Oceanographic Inst.,* 553 F.3d 114, 119 (1st Cir.2009) (setting out the legal standard for equitable tolling). To the contrary, Deering likely had enough information when he filed his original complaint—six months after his termination and after some of the allegedly defamatory statements had been made—to attempt to plead his retaliation and defamation claims. He failed to do so, and the applicable limitations periods have now run. *Id.* ("[E]quitable tolling is sparsely applied and cannot be used to rescue a plaintiff from his or her lack of diligence.").

---

6. Of course, Deering may be arguing that it took him longer to develop his claims than it would have absent the seal, but he has produced no evidence to that effect and I am not prepared to second-guess the legislature based on work productivity estimates.

## 2. Relation Back

■ The statutes of limitations having expired, Deering's retaliation and defamation claims can stand only if they "relate back" to the date of the original complaint under Fed.R.Civ.P. 15(c). It is an open question, however, whether the concept of relation back applies to sealed qui tam actions at all. The Second Circuit, the only federal court of appeals to decide the issue, has held that a claim brought outside the statutory limitations period cannot relate back to a complaint never served on the defendant:

> The secrecy required by § 3730(b) is incompatible with Rule 15(c)(2),[7] because (as is well-settled) the touchstone for relation back pursuant to Rule 15(c)(2) is notice.... "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 159 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). By design, the seal provision of § 3730(b) deprives the defendant in an FCA suit of the notice usually given by a complaint. Because any relation back of subsequent filings to the original complaint is incompatible with the core requirement of notice under Rule 15(c)(2), continued running of the statute of limitations is warranted.

*United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 270 (2d Cir.2006) (citations omitted). In that case, after the relator filed his qui tam complaint alleging Medicare fraud under seal, the government secured sixteen extensions of the seal over the next eight years before filing complaints-in-intervention against the defendant hospitals. The court ruled that the FCA's six-year statute of limitations had run and the government's complaint could not relate back. The court dismissed the suit.

By contrast, numerous district courts have held that relation back does apply to qui tam suits, including one in this jurisdiction. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 498 F.Supp.2d 389 (D.Mass.2007) (holding that the FCA itself must be understood to permit relation back and that the doctrine is therefore available under Fed.R.Civ.P. 15(c)(1)(A)); *see also Tillson*, 2004 WL 2403114 (W.D.Ky.2004); *United States ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F.Supp.2d 8 (D.D.C.2003). These include the cases described above that identify the filing of a sealed complaint, rather than its unsealing, as the point at which a statute of limitations is tolled. *See In re Cardiac Devices*, 221 F.R.D. 318 (D.Conn.2004); *Campbell*, 282 F.Supp.2d 1324 (M.D.Fla. 2003); *Downy*, 118 F.Supp.2d 1160 (D.N.M.2000); *Costa*, 1998 WL 230979 (N.D.Cal.1998). One court has suggested that the Second Circuit's ruling forces an inconsistency into the statutory law: "it would unfairly prejudice the Government to, in one instance, allow for extensions of the seal through Court approval and then dismiss the actions based on those very extensions." *United States ex rel. Serrano v. Oaks Diagnostics, Inc.*, 568 F.Supp.2d 1136, 1140 (C.D.Cal.2008). It seems equally plausible, however, that Congress intended to allow the government to be able to extend the seal, but only to a point. Another court has described *Baylor* as "an outlier case" and distinguished it as barring relation back only for amendments brought by the government. *United States ex rel. Cericola v. Fed. Nat'l Mort-*

---

7. The Rules underwent substantial revisions at the end of 2007. For the most part, these changes were meant to be stylistic only. What the *Baylor* court referred to as Rule 15(c)(2) is now Rule 15(c)(1)(B).

*gage Assoc,* 529 F.Supp.2d 1139, 1150 (C.D.Cal.2007). In that case, the court allowed the relator to add allegations to his FCA claim after the government had declined to intervene and the statute of limitations had expired. Such an interpretation is appealing; otherwise, the government could render a relator's timely filed claims time-barred by its own delay. The argument is even stronger when the relator seeks to add personal claims rather than flesh out a false claims charge brought on behalf of the government: the defendant would be notified of these personal claims but for their connection to the sealed FCA claim.[8]

The instant case does not require me to decide the issue, as even if relation back applies, Deering's retaliation and defamation claims do not meet the legal standard. Under Rule 15(c)(1)(B), the relevant provision when a party seeks to add a claim, an amendment that would be barred by the statute of limitations relates back to the original complaint when the claim "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Courts typically find that allegations relate back to the original claim when a relator seeks to add details to his FCA fraud claim. *See, e.g., United States ex rel. Repko v. Guthrie Clinic, P.C.,* 557 F.Supp.2d 522, 530 (M.D.Pa.2008); *Cericola,* 529 F.Supp.2d at 1150. However, courts tend to see retaliation claims as arising out of occurrences different from those underlying the fraud alleged, even though the relator claims to have been terminated for reporting that fraud.

In *Ortega,* the relator alleged in her original complaint that a hospital fraudulently obtained certification for Medicare reimbursement and thus falsely billed the government for medical services. The court held that she could not later add a claim alleging that the hospital paid illegal kickbacks to physicians for referrals. Though both allegations involved fraud, the kickback scheme involved "distinct facts" and did not arise out of the same conduct as the original claims. 240 F.Supp.2d at 15. In *United States ex rel. Smart v. Christus Health,* No. 05–287, 2009 WL 151590 (S.D.Tex. Jan. 22, 2009), a property manager for a health care provider alleged that the provider committed Medicare fraud by entering into below-market leases with doctors in return for referrals. The court dismissed his subsequently added retaliation claim as time-barred, noting that relation back "is inapplicable here because Relator's retaliation claim is a new wrong, distinct from the fraud alleged in the rest of the complaint." *Id.* at *10 n. 12. In *United States ex rel. Nichols v. Omni H.C., Inc.,* No. 02–66, 2008 WL 906426 (M.D.Ga. Mar. 31, 2008), the court held that a relator's claim under the FCA that he was fired for complaining

---

8. Deering appears also to argue that he should be allowed to raise a new claim any time before the seal is lifted because such amendment does not alter the level of notice provided to defendants in a qui tam case. He writes, "[e]ven if the Plaintiff had filed the original complaint or amended it within what the Defendants claim is the applicable time for the statute of limitations with separate counts for retaliation and defamation, because the case was under seal, the Defendants would not have been made aware of the Plaintiff's allegations contained within his original complaint until years later." Pl.'s Opp'n 18 (document # 59). This logic, however, renders statutes of limitations utterly ineffectual. "The purpose of statutes of limitations is to avoid the difficulties inherent in litigating matters long past, and to provide repose to potential defendants regarding such matters." *Marcoux v. Shell Oil Prods. Co. LLC,* 524 F.3d 33, 42 (1st Cir.2008). A rule that allowed relators to add claims outside of the limitations period so long as the case had not been unsealed would not encourage plaintiffs to plead or investigate their claims while the evidence was still fresh and would unfairly extend defendants' exposure to liability.

about Medicare fraud to his superiors did not share a common core of operative fact with—and thus did not relate back to—his fraud claim under the FCA. The court explained:

> [T]he operative facts in a retaliatory discharge claim center around the employee, his employment history, and his conduct vis-à-vis his employer rather than the employer's allegedly fraudulent conduct vis-à-vis the Government. The operative facts with respect to the false claims alleged to have occurred here center around the patients in the Defendant facilities, the treatments they received or did not receive, and the billing practices that the Defendants employed. The validity of Nichols' allegations as to the patient billing practices, as pleaded in the original complaint, are not necessary to a determination as to Nichols' new allegations pertaining to the lawfulness of Defendants' conduct toward him as an employee.

*Id.* at *3; *cf. Tillson*, 2004 WL 2403114, at *9 (holding that retaliation claim "is clearly distinct" from the allegations of fraudulent billing on the separate question of whether the relator's retaliation count was barred under the first-to-file rule).

The same is true in this case. Deering's fraud allegation, the only claim pleaded in his original complaint, concerned the treatments PA's patients did and did not receive and the corporation's billing practices. His retaliation claim concerns not whether PA had been committing fraud, but rather whether he complained to PA supervisors "in furtherance of" an FCA action, whether PA was aware that an FCA action was a reasonable possibility, and whether PA discharged him because of his complaints. *See Maturi v. McLaughlin Research Corp.*, 413 F.3d 166, 172 (1st Cir.2005) (describing the standard for stating a claim under 31 U.S.C. § 3730(h)). His defamation claim concerns whether the defendants made false statements

about him; whether they made those statements with knowledge, negligence, or reckless disregard as to their falsity; whether they published the statements to a third party; and whether the statements caused Deering harm. *See Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315–16, 560 P.2d 1216 (1977) (setting out the elements for defamation of a private person). The conduct underlying the retaliation and defamation claims may have been motivated by Deering's undertaking the FCA claim, but the claims turn on distinct facts.

The allegations pleaded in the original complaint do not suggest the possibility that the defendants could face additional claims for retaliation and defamation. The original complaint contains no hint that PA took any adverse action against Deering for engaging in protected conduct—indeed, it does not even identify Deering as an employee of PA—and it does not mention any defamatory statements. *See generally* Compl. (document #1). Thus, the new claims do not arise out of "the conduct, transaction, or occurrence" underlying the FCA fraud claim.

A federal district court in Tennessee facing substantially the same circumstances came to the same conclusion last year in *United States ex rel. Whitcomb v. Physiotherapy Assocs., Inc.*, 555 F.Supp.2d 949 (W.D.Tenn.2008). Wendy Whitcomb learned of PA's fraudulent billing practices while overseeing the accounts receivable and supervising staff at PA's facility in Richardson, Texas. On September 25, 2003, she filed a qui tam suit raising only a fraud claim under the FCA. She amended her complaint on July 30, 2007—the same day that Deering filed his amended complaint—and added a claim for retaliation. The court held that the statute of limitations had run and that the retaliation claim did not relate back to the 2003 complaint: "Her original complaint is

devoid of any facts or allegations indicating Defendants harassed, discriminated, or took any adverse action against her for engaging in protected conduct. Although both complaints share factual allegations pertaining to PA's billing practices, this alone is insufficient to impart notice of Relator's retaliation claim on Defendants." *Id.* at 953. Deering's case does not differ in any material way. Accordingly, relation back does not apply, and his retaliation and defamation claims must be dismissed as time-barred.[9]

### 3. Defamation: 2007 Statements

Because I find the retaliation claim and the bulk of the defamation claim to be time-barred, I need not address the defendants' alternative arguments. However, two statements underlying the defamation claim are arguably still in the case: (1) a rumor heard by Kingman's mayor at a local golf club in the spring or summer of 2007 that Deering had gotten into trouble with Medicare over billing; and (2) former PA employee Jesse Storing's comment, while working at her permanent makeup tattoo business on November 27, 2007, to Loretta Buus that Deering had left town "because he was ashamed of wrongfully billing Medicare."

 The golf club rumor must be dismissed for inadequate pleading. Deering has failed to identify who repeated the statement to the mayor. He has not provided even a general description of the declarant, let alone alleged any connection between that declarant and PA or Stryker. *See Athans,* 2007 WL 899130, at *2 (dismissing a defamation claim because plaintiff failed to identify the time or place of statements in question or any basis for defendant corporation's liability). A ru-

---

9. Deering raises a number of additional arguments for preserving his claims, but all are unavailing. First, he emphasizes that Fed. R.Civ.P. 15(a) allows a plaintiff one amendment as of right so long as a responsive pleading has not yet been filed. This rule does not serve as an exception to the applicable statutes of limitations and will not save claims that do not relate back. Second, he argues that his claims are proper under Rule 15(c)(1)(A), which provides that an amendment relates back when "the law that provides the applicable statute of limitations allows relation back." But the applicable state and federal laws do not provide for relation back, and the state laws Deering cites—the Arizona and Massachusetts rules of civil procedure—provide the same standard for relation back as the federal rules. *See* Ariz. R. Civ. P. 15(c) (echoing the "conduct, transaction, or occurrence" test); Mass. R. Civ. P. 15(c) (same). Third, Deering argues that his allegations are subsequent and continuing occurrences that can be amended under Rule 15(d). That rule allows for the supplementation of a pleading with allegations arising from conduct that occurred after the pleading was filed. It does not allow a party to escape an applicable statute of limitations. Fourth, Deering argues that he put the defendants on notice of his retaliation claim in his original complaint by bringing suit pursuant to "§ 3729–33," a range that includes the retaliation provision at § 3730(h). Mentioning a statutory range is insufficient to notify a party of a specific cause of action; to hold otherwise would encourage parties to plead broad citations from the U.S. Code without further detail and to leave defendants without any meaningful notice of what claims they face. Moreover, the original complaint contains no intimation that Deering included such a large range in order to preserve a future retaliation claim. Finally, Deering insists that the defendants agreed that "this court would retain jurisdiction over relator's retaliation claims" in the parties' stipulation of voluntary partial dismissal and that I specifically retained jurisdiction over the claims in my order adopting their agreement. Pl.'s Opp'n 19 (document # 59). This argument is without basis. My order clearly stated that I would retain jurisdiction merely to decide "issues" concerning Deering's discharge and that dismissal of the FCA claim would be "without prejudice as to … defendants' right to challenge or seek dismissal of Relator Deering's claims under 31 U.S.C. § 3730(d) and 31 U.S.C. § 3730(h)." Order of Sept. 11, 2007, ¶ 4 (document # 36); Stip. Vol. Partial Dism. 2 (document # 33).

mor of this sort is not actionable. *See, e.g., Brisco v. LeTourneau Techs., Inc.,* No. 07–99, 2008 WL 4793791, at *7 (S.D.Miss. Oct. 27, 2008) (dismissing defamation claim where plaintiff did not advance evidence that any employee of the defendant corporation was responsible for rumors that she was fired for failing a drug test, and noting that "[t]he fact that a rumor is widespread proves nothing about its origin"). The other comment is more specific, but it is traced to a person who had no agency relationship with PA when she made the statement. It cannot support a claim against PA or Stryker, and Deering has not sued Storing herself.

Even if either statement could meet the pleading requirements of Fed.R.Civ.P. 8(a), I decline to exercise supplementary jurisdiction over a lone state law defamation claim. This Court had subject matter jurisdiction over Deering's Arizona defamation claim under 28 U.S.C. § 1367. That same statute allows a federal court to decline to exercise supplementary jurisdiction where all the federal claims in a suit have been dismissed. *See id.* § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, I dismiss the remains of the defamation claim for lack of subject matter jurisdiction.

## IV. *CONCLUSION*

I hereby **GRANT** the defendants' Motion to Dismiss (document # 43). Because it would be futile to allow further amendment of claims that must be dismissed, I **DENY** plaintiff's Motion to Amend Complaint (document # 75).

**SO ORDERED.**